Karl B. CAMERON, Appellant,

v.

Kathryn D. (Cameron) HUGHES, Appellee.

No. S–3506.

Supreme Court of Alaska.

Feb. 7, 1992.

William J. Soule, Law Office of William J. Soule, Anchorage, for appellant.

Thomas H. Dahl, Dahl and Hartke, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal involves various orders which were entered by the superior court subsequent to its grant of a divorce decree which required appellant Karl Cameron to pay support for the parties' minor child.

## I. FACTS AND PROCEEDINGS

Karl Cameron and Kathryn (Cameron) Hughes were married in July 1965. They had one child, Jolyna Marie Cameron, born June 17, 1966. After 12 years of marriage, in December 1977, Cameron and Hughes divorced. Under the parties' child custody and support agreement, Cameron agreed to pay $200.00 per month in child support and to assume responsibility for Jolyna's medical expenses.

In 1983, Cameron injured his back and suffered pulmonary problems while working in Kodiak. Since that time, Cameron has received workers' compensation and social security disability benefits. Following his injury, Cameron moved to California.

Cameron was in arrears on his child support payments and on December 12, 1985, the superior court reduced the arrearages to judgment awarding Hughes a total of $26,746.31 for unpaid child support.[1] By March 1, 1989, the amount owed by Cameron under the judgment had increased to $35,717.68. On March 1, 1989, the attorney for Cameron's workers' compensation carrier was served with a writ of execution (garnishment) for the total amount owed by Cameron to Hughes. Thereafter Cameron's workers' compensation and disability benefits were, pursuant to execution, de-

---

1. The award amount consists of the following items: $12,000 for unpaid child support, $4,466.05 for medical expenses, $42.96 for costs, $3,118.50 in attorney's fees and $7,018.80 in interest.

posited in the registry of the superior court. Cameron estimated that as of May 24, 1989, $7,195.19 of his benefits had been deposited in the court's registry.

Cameron claimed an exemption from execution in a hearing before a superior court master. The master found that the only income Cameron and his present wife had was comprised of Cameron's social security and workers' compensation benefits, totalling $4,158.52 per month. The master further found that Cameron had assigned most of the $816 he received monthly as social security benefits to the Internal Revenue Service for payment of back taxes. The master concluded that since Cameron was a California resident and was supporting a dependant spouse, the non-resident debtor provision, AS 09.38.030(d), applied and that it followed that any execution against Cameron was limited by 15 U.S.C. § 1673 to 50 percent of his aggregate disposable earnings, which included his workers' compensation and social security benefits.

The superior court, on June 20, 1989, approved the master's report allowing Hughes to recover for child support, medical payments, interest, and costs and attorney's fees. On June 30, 1989, Cameron filed a petition for bankruptcy and obtained an automatic stay of the superior court proceedings. Then on July 24, 1989, Cameron filed an appeal to this court from the superior court's final order allowing execution against 50 percent of his workers' compensation and social security benefits. On March 6, 1990, the bankruptcy court granted Hughes' motion to terminate the automatic stay in order to allow resolution of Cameron's pending appeal to this court. The bankruptcy court further awarded Hughes one-half of the funds then deposited in its registry.

On September 19, 1990, Hughes moved the superior court to modify the judgment it entered against Cameron in 1985 to reflect the costs Hughes had incurred in collecting the judgment. The superior court,

on December 10, 1990, granted the motion increasing the original judgment amount of $26,746.31 by adding $37,714.75 in collection costs and attorney's fees. In addition, the court ordered that the new total judgment of $64,461.06 accrue 10.5 percent interest per annum from December 12, 1985.

On September 19, 1990, Hughes also moved the superior court for an order requiring Cameron to file a supersedeas bond pursuant to Appellate Rule 204(d) or suffer dismissal of his appeal. Hughes also moved this court for an extension of time to file her appellee's brief until thirty days after the superior court ruled on her motion to require Cameron to file a supersedeas bond. The motion was denied by Justice Matthews, who observed that a supersedeas bond is not required to maintain an appeal. Thereafter, on December 10, 1990, the superior court granted Hughes' motion and required Cameron to file a supersedeas bond in the amount of $80,000 as a precondition to his maintaining this appeal.

Subsequently, the superior court denied Cameron's motion for reconsideration of the court's December 10, 1990 orders which required the filing of an $80,000 supersedeas bond and increased the original judgment which had been entered against Cameron by allowing post judgment collection costs and attorney's fees. Cameron now appeals from these orders.

## II. SUPERSEDEAS BOND

■ Cameron contends that the superior court erred in requiring him to post a supersedeas bond pursuant to Appellate Rule 204(d).[2]

The parties agree that a supersedeas bond is not required in order to maintain an appeal. However, Hughes asserts that considerations of justice require that a bond be posted. She notes that Cameron's assets are now under the protection of the bankruptcy court. Without the bond, she contends, she will be unable to execute on the judgment if Cameron's appeal fails.

■ We conclude that by requiring Cameron to post a supersedeas bond, the supe-

2. Since this is a purely legal question, the standard of review is *de novo*. *Anderson v.*

*Anderson,* 736 P.2d 320, 321 (Alaska 1987).

rior court violated the Bankruptcy Court's stay and misinterpreted Appellate Rule 204(d). Cameron correctly argues that the Bankruptcy Court's automatic stay was not partially terminated for the purpose of authorizing the superior court to require that Cameron post a $80,000 supersedeas bond. Since the stay was terminated "solely for the purposes of pursuing resolution of the pending Alaska State Court Appeal," the superior court's December 10, 1990 order requiring that Cameron post a supersedeas bond violated the Bankruptcy Court's stay.

■ More importantly, we hold that the superior court lacked discretion under Appellate Rule 204(d)[3] to grant Hughes' motion which sought an order requiring appellant to post an $80,000 supersedeas bond as a precondition to maintaining this appeal. The supersedeas bond provisions of Appellate Rule 204(d) come into play only if the appellant desires a stay pending appeal. In the instant case, Cameron did not request a stay on appeal and therefore, under the provisions of Rule 204(d), he cannot be compelled to post a supersedeas bond. Accordingly, we reverse and vacate the superior court's order requiring Cameron to post an $80,000 supersedeas bond.

## III. EXEMPTIONS

■ Cameron's primary contention in this appeal is that the superior court erred in not applying the exemptions from execution available in California, his present state of residence, as provided for in AS 09.38.120.[4]

As a resident of California, Cameron asserts that his workers' compensation benefits are "property" protected from garnishment under AS 09.38.120(a), which provides that "[n]onresidents are entitled to the exemptions provided by the law of the jurisdiction of their residence." Specifically, Cameron argues that the superior court erred in ruling that workers' compensation benefits were "earnings" for purposes of AS 09.38.030, which in turn requires application of 15 U.S.C. § 1673.

■ We hold that the superior court correctly applied AS 09.38.030(d) and 15 U.S.C. § 1673 in allowing garnishment of 50 percent of Cameron's benefits.[5] Alaska Statute 09.38.120 and all of the other exemptions provided for in Alaska's Exemption Act are subject to the limitations of AS 09.38.065(a)(1)(A), which provides:

> Notwithstanding other provisions of this chapter,
>
> (1) a creditor may make a levy against exempt property of any kind to enforce a claim for
>
> (A) child support.[6]

3. Appellate Rule 204(d) provides in pertinent part:

> Whenever in a civil case an appellant entitled thereto desires a stay on appeal, he may present to the superior court for its approval a supersedeas bond which shall have such surety or sureties as the court requires.

4. On questions of statutory interpretation, the standard of review is *de novo. Anderson,* 736 P.2d at 321.

5. Hughes argues that the court should have allowed garnishment of 55 percent of Cameron's benefits under 15 U.S.C. § 1673(b)(2) because the liability "arose prior to the receipt of the benefit." We agree with Cameron's argument that Hughes waived that point by failing to cross-appeal. *See Jackson v. Nangle,* 677 P.2d 242, 247 n. 3 (Alaska 1984).

Hughes represents that Cameron and his present wife have moved to dissolve their marriage in California. Hughes argues that if the dissolution is finalized, she will then be entitled to garnish 65 percent of Cameron's earnings because Cameron will no longer be supporting a spouse. Cameron asserts that the superior court's June 20, 1989 determination is res judicata on the question. However, since Cameron's divorce had not occurred at the time of the superior court's order, res judicata does not bar consideration of the issue. Hughes is free to seek a modification of the order after Cameron's divorce is finalized.

6. Cameron argues that his workers' compensation benefits are property. Therefore, we need not reach the issue of whether workers' compensation benefits are property or earnings.

Even if Cameron's workers' compensation benefits were considered earnings, they would be subject to execution under AS 09.38.-030(c)(1). In this regard AS 09.38.030(c)(1) provides: "[a] creditor may levy upon earnings exempt under (a) and (b) of this section if the creditor's claim is ... enforceable against exempt property under AS 09.38.065(a)(1)."

Cameron argues that the effect of AS 09.38.065 is limited to "other provisions of this chapter" and does not apply to the benefits under Workers' Compensation Act, Title 23, Chapter 30. He also asserts that "the result afforded by the trial court's ruling in this case is to make Cameron a pauper and a ward of the state." Cameron supports his claim with what he terms the "anti-lien provision" of the Alaska Workers' Compensation Act, AS 23.30.-160(b), which provides "[b]enefits payable under this chapter are exempt from levy to enforce the collection of a debt as provided in AS 09.38 (exemptions)." According to Cameron, the court should read the anti-lien provision in light of the maxim of construction that workers' compensation laws should be liberally construed to effectuate their beneficent purpose, to prevent garnishment of his benefits. *See Hood v. State Workmen's Compensation Bd.*, 574 P.2d 811 (Alaska 1978). Hughes counters that the workers' compensation laws are intended to protect workers and their families from outside creditors, not to protect workers from their families.

We reject Cameron's contentions. Cameron's reliance on the anti-lien provision of the Workers' Compensation Act lacks merit; section 160 provides that benefits are exempt from levy "as provided in AS 09.-38." As noted above, AS 09.38.065(a)(1)(A) explicitly provides that for purposes of enforcing a claim for child support a creditor may levy against exempt property.

The legislature's intent to provide for the dependents of the judgment debtor, as well as the debtor, is further evidenced by the legislature's statement of intent in enacting the Alaska Exemptions Act:

It is the intent of the legislature to modernize the procedures for execution on a judgment and to afford to a judgment debtor adequate protection of his personal property and income necessary to provide for his own needs and the needs of his dependents while remaining independent of further assistance.

*Anderson*, 736 P.2d at 322–23 (Alaska 1987) (quoting Ch. 62 § 1, SLA 1982).

In *Anderson* we held that the "notwithstanding" provision in AS 09.38.065(a)(1)(A) allowed execution on otherwise exempt property, a limited entry permit, to satisfy past due child support, even in the face of express language to the contrary in the Alaska Limited Entry Act, AS 16.43.150. The limited entry act prohibited attachment of entry permits "under any other process or order of any court." *Id.*, at 324. In concluding that section 09.38.065(a)(1)(A) applied, we relied upon the legislature's consistent concern and support for "the compelling public policy favoring enforcement of child support obligations." *Id.*, at 323 n. 2. Unlike *Anderson*, where the two acts conflicted, in the instant case the Alaska Exemptions Act and the Workers' Compensation Act both clearly favor the compelling public policy of enforcing child support obligations.

Accordingly, we affirm the superior court's June 30, 1989 order allowing garnishment of 50% of Cameron's workers' compensation and social security benefits pursuant to 15 U.S.C. § 1673.

## IV. MEDICAL EXPENSES, COSTS AND ATTORNEY'S FEES

■ We next address the question of whether the superior court erred in its judgment of December 12, 1985, in allowing Hughes to recover medical expenses, interest, costs and attorney's fees as "child support." Cameron asserts that the term "child support" is unambiguous and cannot be interpreted to include medical expenses,[7] interest, costs and attorney's fees. Cameron further argues that the superior court erroneously relied on 42 U.S.C. § 662 and its definition of "child support" in fashioning its judgment.

■ We reject Cameron's arguments. Alaska Statute 09.38.030(d) provides that in the case of a nonresident debtor the limita-

---

7. We note that the Child Custody and Property Settlement Agreement entered into by the parties on July 14, 1977 provides that in addition to the monthly support payments of $200, Camer-

on "shall pay and be responsible for medical expenses." In light of this agreement, there is little doubt that in this instance child support should include medical expenses.

tions on garnishment imposed by 15 U.S.C. § 1673 apply. While Title 15 does not contain a definition of the term "child support," 42 U.S.C. § 662 defines the term broadly to include payments for health care and "attorney's fees, interest, and court costs, when and to the extent that the same are expressly made recoverable as such pursuant to a decree, order, or judgment issued in accordance with applicable State law." In regard to the provisions of 42 U.S.C. § 662, Cameron's position is that this definition is only applicable to 42 U.S.C. § 659. Section 659 provides that monies paid by the federal government to individuals are subject to the same legal process for the enforcement of child support and alimony obligations as monies paid by other individuals or organizations. Because the intent of the provision was to assure that all monies, federal and non-federal, are treated identically for the purposes of garnishment for child support and alimony obligations, we are not persuaded that child support should be defined differently for federal and non-federal monies. *See Diaz v. Diaz*, 568 F.2d 1061, 1063 (4th Cir.1977).

Therefore, the superior court did not err in defining child support to include related medical expenses, interest, costs and attorney's fees.

## V. ATTORNEY'S FEES FOR POST JUDGMENT COLLECTION

Cameron argues that the superior court abused its discretion in adding post judgment collection attorney's fees to the sums owed to Hughes and erred by failing to make any findings concerning the necessity and reasonableness of the awarded attorney's fees. In *O'Link v. O'Link*, we held that the superior court has broad discretion to award costs and attorney's fees under Civil Rule 82 where a party seeks modification of an arrearages judgment. 632 P.2d 225, 231 n. 15. (Alaska 1981). However, we have limited the applicability of the rule to "costs of the action." *Id.* at 231 (citing *Alaska State Hous. Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1249 (Alaska 1978)). Any award of attorney's fees for legal services incurred subsequent to a judgment for past due child support should be a cost of the action to the extent that the fees were attributable to reasonable and necessarily incurred legal efforts by Hughes to collect the judgment. Therefore, we reverse the superior court's December 12, 1990 order awarding collection costs and remand the issue for a full hearing in order to determine the amount of attorney's fees reasonably and necessarily incurred by Hughes to enforce the judgment.

The judgment and orders of the superior court are AFFIRMED in part, REVERSED in part, and the matter REMANDED for a full hearing on the issue of post judgment attorney's fees.