Robert J. BAUMAN and Judy A. Bauman, Appellants and Cross–Appellees,

v.

James R. DAY and Helen B. Day, Appellees and Cross–Appellants.

Nos. S–5350/S–5368.

Supreme Court of Alaska.

March 24, 1995.

Zane D. Wilson, Jo A. Kuchle, A. René Broker, Staley Delisio & Cook, Fairbanks, for appellees and cross-appellants.

### ORDER

. On consideration of the petition for rehearing filed on December 5, 1994,

IT IS ORDERED:

1. The petition for rehearing is DENIED, except that the last sentence on page 28 of the majority opinion shall be modified to read as follows: "We also VACATE the award of attorney's fees and costs."

2. Opinion No. 4147 published on November 25, 1994, is WITHDRAWN.

3. Opinion No. 4182 is issued on this date in its place.

Entered at the direction of the Court at Anchorage, Alaska, on March 24, 1995.

EASTAUGH, J., not participating.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J., pro tem.*

### OPINION

COMPTON, Justice.

After discovering permafrost on land that they purchased from James Day and Helen Day (the Days), Robert Bauman and Judy Bauman (the Baumans) stopped making payments on the promissory note with which the purchase was financed. The Days started foreclosure proceedings on the deed of trust that secured the note. On the day of the foreclosure sale, the Baumans filed a complaint alleging fraud and breach of contract as to the original transaction. The superior court set aside the foreclosure and ordered the Baumans to pay a "cure" amount to cover the missed payments and other costs. Later, the superior court dismissed the Baumans' fraud and contract complaints on the ground that the statute of limitations for each cause of action had run. The Baumans appeal, *inter alia*, the dismissal of their fraud and contract claims and the denial of their motion to file a second amended complaint. The

Robert John, The Law Office of William R. Satterberg, Jr., Fairbanks, for appellants and cross-appellees.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Days cross-appeal the setting aside of the foreclosure sale.

We affirm the trial court's use of its equitable powers to set aside the nonjudicial foreclosure sale. We also affirm the trial court's rulings that the Baumans' tort claims are barred by the applicable statute of limitations, and that the ten-year statute of limitations for actions involving an interest in real property does not apply here. Additionally, we affirm its denial of the Baumans' motion to file a second amended complaint. We reverse the trial court's dismissal of the Baumans' contract claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 1984 the Days conveyed to the Baumans, by means of a warranty deed, a lot in the Green Acres subdivision near Fairbanks. The Baumans made a downpayment of $2,000 on the $20,000 purchase price. They also signed a promissory note under which they agreed to pay the remaining $18,000, plus interest, in monthly installments of $150 until September 1, 1999, "at which last mentioned date the entire outstanding balance [would be] due and payable in full." To secure payment of the promissory note, the Baumans executed a deed of trust on the property and made the Days the beneficiaries.

Before purchasing the property, Robert Bauman allegedly asked James Day if the lot was laden with permafrost. Mr. Day responded that there was no permafrost and that the lot was suitable for building a home. Accordingly, after purchasing the lot from the Days, the Baumans built a home on it.

In 1986 permafrost-related problems began to develop. They increased over the next few years. At first the house merely settled somewhat, and the Baumans paid little mind to this because they expected some settling to occur. However, over the next few years thawing permafrost caused holes to appear on the land, forcing the Baumans to fill or barricade them, and ultimately requiring relocation of the driveway. In addition, the house shifted constantly, preventing the installation of glass windows and sheetrock.

According to an affidavit that the Baumans filed with the superior court, the "apparent permafrost dilemma" led them to stop paying their property taxes to the Fairbanks North Star Borough in 1988: "We felt we were paying more than our fair share on property taxes and in protest thereof postponed paying the assessed taxes starting in 1988 pending reevaluation of the land due to the permafrost discovered on the land." In 1992 the Borough readjusted the assessed land value down to $4,422.

In early 1991 the Baumans stopped making payments on the promissory note, in protest of a lack of action by the Days on the permafrost issue. In August the Days' counsel warned the Baumans that their loan was delinquent, and threatened foreclosure. This letter, as the Baumans acknowledge, notified them of their right to cure the default and prevent foreclosure by paying the amount owed. In October the Days sent the Baumans a Notice of Default and Election to Sell, scheduling a foreclosure sale for January 22, 1992.

During 1991 the Baumans allegedly made numerous attempts to discuss matters with the Days. Robert Bauman contacted Helen Day several times by phone, informing her of the permafrost difficulties and asking that they renegotiate the original sales contract. Ms. Day repeatedly told him that she and her husband were too busy to discuss these issues, but that she would get back to him later. The last of these phone calls occurred in July. In September, after receipt of the letter from the Days' counsel but before receipt of the Notice of Default, the Baumans sent the Days a letter detailing the problems with the land and again asking to settle them without resorting to legal proceedings. The Days did not reply to the letter. There is no evidence in the record of any discussions between the Baumans and the Days after receipt of the Notice of Default.

On January 22, 1992, the day of the foreclosure sale, the Baumans filed a complaint *pro se.* They alleged various claims for breach of contract arising from the Days' failure to deliver suitable building ground and failure to inform the Baumans before or

at the time of the sale about the presence of permafrost. The Baumans also alleged tort claims for fraud and misrepresentation, arising from the Days' willful failure to inform the Baumans of the presence of permafrost. In addition, the Baumans moved for a temporary injunction stopping the foreclosure sale.

The Days' counsel postponed the foreclosure sale from 10 a.m. to 2 p.m., and filed an opposition to the Baumans' request for the temporary restraining order. The court denied the Baumans' motion as moot,[1] and the foreclosure sale took place at 2 p.m. The Days repurchased the property by filing an offset bid.

The Days served the Baumans with a notice to quit, and filed an answer and counterclaim to the Baumans' complaint. The counterclaim sought summary eviction of the Baumans under Alaska's forcible entry and detainer statute, AS 09.45.060–.160. The Baumans answered the Days' counterclaim *pro se*, alleging affirmative defenses that included promissory estoppel, fraud, and fraudulent concealment.

In March the court conducted the forcible entry and detainer hearing, at which the Baumans appeared *pro se*. Though the foreclosure had already gone through, the superior court used its equitable powers to stay the Baumans' eviction, provided that the Baumans paid the amounts they owed on the promissory note and posted a $5,000 bond to cover the Days' costs and attorney's fees in the event that foreclosure was proper:[2]

> In other words, legally, you can't have your cake and eat it too.... I'm permitting, because of the equitable powers I have, you to go back a few steps as if the foreclosure hadn't been completed, and give you your reinstatement rights so that you may preserve the house and litigate it. Otherwise, if you sue for the value of the house and your damages, you can't live in it too....
>
> ....
>
> ... I'm going back and granting what you asked for before the foreclosure sale, as if it had never happened. I'm doing this without giving [the Days' counsel] a chance to have argued me out of it today.

Under protest, the Baumans deposited with the court the $5,000 bond, plus $1,950 to cover the arrearages. The court ordered a stay of the eviction. The order directed the Baumans to "reinstate and pay to [the Days] in full their arrearages under the land purchase contract ... and timely make each monthly payment falling due while this litigation is pending."

The Days moved for reconsideration. The trial court allowed additional briefing on the stay of the eviction, and held oral arguments on the Days' motion in April. However, Judge Savell permitted the Baumans to exercise reinstatement by paying both the deficiency on the promissory note and the costs and attorney's fees that the Days incurred carrying out the foreclosure sale.

The Baumans moved to have the court determine the amount necessary to cure the deficiency and to have the court pay this sum from the funds that they had already deposited. The court issued an order setting aside the nonjudicial foreclosure and determining the amount for cure to be $6,287.58.[3] The order directed payment of the cure amount from the funds that the Baumans had deposited with the court, and return of the balance remaining thereafter to the Baumans.

Meanwhile, the Days moved for summary judgment on the Baumans' tort and contract claims, arguing that they were barred under the applicable statutes of limitations. At the same time, the Baumans obtained counsel and moved to file an amended complaint.

1. The Baumans remark that the superior court based its decision on mootness even though the foreclosure sale had not yet occurred. However, the Baumans do not challenge this decision on appeal.

2. Judge Savell initially characterized this bond as the bond required under Alaska Civil Rule 65(c) in order for a party to obtain a preliminary injunction. Since Judge Savell ultimately set aside the foreclosure permanently, whether or not the initial stay of eviction was intended to be a preliminary injunction is irrelevant at this point.

3. The "cure" amount is apparently a sum which the Days' counsel had calculated and submitted to the Baumans a few days earlier.

The amended complaint presented contract claims based on the Days' alleged breach of express and implied warranties as to the presence of permafrost on property. The amended complaint contained no tort or fraud claims. The court allowed the amended complaint. Shortly thereafter, the Baumans filed a brief opposition to the Days' motion for summary judgment on the tort claims, arguing solely that the motion was "moot, the complaint having been amended, and that the [Days' alleged] fraudulent conduct ..., while it may be called a tort, is also certainly a basis for relief with respect to the contract...." The Baumans also opposed the summary judgment motion on the contract claims, urging that the court use the "discovery rule" to determine when the statute of limitations started to run.

The superior court issued a memorandum decision on the summary judgment motions. The court determined that the Baumans discovered or reasonably should have discovered the existence of permafrost in 1988, the time at which they stopped paying their property taxes. The court concluded that the two-year statute of limitations for tort claims started to run at that time and that the Baumans' fraud action was thus untimely. The trial court also found that the Baumans' contract claims were untimely under the applicable six-year statute of limitations. It concluded that the limitations period began to run at the formation of the contract in 1984, not at the time when the Baumans discovered the permafrost. Finally, it barred the Baumans from raising their fraud and contract claims as affirmative defenses to the foreclosure.

The Days filed motions for final judgment and attorney's fees, which the Baumans opposed. In their opposition, they said that they would move to file a second amended complaint with new fraud claims, based on evidence allegedly discovered in 1992. The court granted final judgment to the Days on August 25.

The Baumans next filed a combined motion for relief from the judgment and leave to file a second amended complaint. They argued that the ten-year statute of limitations for real property claims applied to their case. The proposed second amended complaint raised new fraud claims. It included an allegation that, according to an inspection of Borough records that the Baumans conducted in 1992, the Days did not give the Baumans a portion of the plat that showed the presence of permafrost-laden soils on the land. In addition, the proposed complaint alleged facts unrelated to the permafrost issue. The Baumans alleged that the Days concealed the fact that the monthly payments on the promissory note went primarily to interest, not equity, and that the Baumans did not discover the concealment until 1992.[4] The Baumans also claimed that their inspection of Borough files revealed that the Days improperly altered the preliminary subdivision plat to create three smaller lots, one of which was the lot purchased by the Baumans. The superior court denied the Baumans' combined motion.

Both parties appeal. The Baumans appeal, *inter alia*, the granting of the Days' summary judgment motions, the award of attorney's fees, and the denial of the combined motion for relief from the judgment and leave to file a second amended complaint. The Days cross-appeal the setting aside of the foreclosure.

## II. *DISCUSSION*

### A. SETTING ASIDE THE FORECLOSURE SALE

 In their cross-appeal, the Days argue that the superior court erred by setting aside the foreclosure sale. They contend that AS 34.20.090(a) specifically denies the Baumans a right of redemption after a valid non-judicial foreclosure has taken place.[5] Alaska Statute 34.20.090(a) provides:

---

**4.** This allegation was made prior to the proposed second amended complaint. In fact, the Baumans alleged this particular act of fraud as early as March 1992, in support of a motion to set aside the foreclosure sale. This allegation does not appear in the first amended complaint.

**5.** Alaska Statute 34.20.070(a) allows the nonjudicial sale of property encumbered by a deed of trust, if the party who executes the deed of trust defaults on the obligation it secures. AS 34.29.070(a) states in part:

The sale and conveyance transfers all title and interest that the party executing the deed of trust had in the property sold at the time of its execution, together with all title and interest that party may have acquired before the sale, and *the party executing the deed of trust or the heirs or assigns of that party have no right or privilege to redeem the property, unless the deed of trust so declares.*

(Emphasis added).

The Days correctly point out that the cases the Baumans rely on to support setting aside a non-judicial foreclosure are based on defects in the foreclosure sale rather than substantive defects in the underlying sales contract. *See, e.g., Rosenberg v. Smidt,* 727 P.2d 778, 783–84 (Alaska 1986) (sale set aside because of failure to provide proper notice); *McHugh v. Church,* 583 P.2d 210 (Alaska 1978) (discussing setting aside sale if inadequacy of price shocks the conscience or sale itself is otherwise unfair or fraudulent); *Harris v. Alaska Title Guaranty Co.,* 510 P.2d 501 (Alaska 1973) (error in notice of default insufficient to set aside sale). The Days conclude that because the foreclosure sale was conducted without irregularities, the superior court lacked any equitable powers to

set the sale aside.[6] The Baumans do not allege any defects in the foreclosure proceeding itself; they concede that the sale was conducted in accordance with AS 34.20.070–.080.[7] Rather, the Baumans counter that the Days' alleged wrongful conduct makes their pursuit of foreclosure an improper response to the Baumans' refusal to make payments on the deed of trust. *See Rosenberg,* 727 P.2d at 783–84 ("substantial defects such as the lack of a substantive basis to foreclose in the first place will make a sale void") (citation omitted). Because of the Days' alleged misrepresentations and the alleged unfairness of the underlying land sale, the Baumans contend that the foreclosure sale was properly set aside. We agree.

The Days' reliance on AS 34.20.090(a) is misplaced. The Baumans are not attempting to redeem property. Rather, the Baumans are suing on the underlying sales contract. They are seeking, among other remedies, to have the purchase contract, including the note and deed of trust, reformed to reflect the true value of the property. It follows that if the underlying sales contract as written is invalid, the sale of the property is likewise invalid.[8] We see no

---

If a deed of trust is executed conveying real property located in the state to a trustee as security for the payment of an indebtedness and the deed provides that in case of default or noncompliance with the terms of the trust, the trustee may sell the property for condition broken, the trustee, in addition to the right of foreclosure and sale, may execute the trust by sale of the property, upon the conditions and in the manner set forth in the deed of trust, without first securing a decree of foreclosure and order of sale from the court, if the trustee has complied with the notice requirements of (b) of this section.

If the party who executes the deed of trust defaults the obligation, the party nonetheless has a right of redemption. In other words, the party has the opportunity to cure the default at any time *before* a nonjudicial sale:

At any time before the sale, if the default has arisen by failure to make payments required by the trust deed, the default may be cured by payment of the sum in default other than the principal which would not then be due if no default had occurred, plus attorney fees or court costs actually incurred by the trustee due to the default.

AS 34.20.070(b).

**6.** In the alternative, the Days allege that the superior court denied them due process of law at the forcible entry and detainer hearing and that the court's action prevented them from protecting their interest in the property. At the hearing the court stated that it was "going back and granting what [the Baumans] asked for before the foreclosure sale, as if it had never happened. I'm doing this without giving [the Days' counsel] a chance to have argued me out of it today." As a result, the Days contend they were not given the chance to argue the merits or to present documents evidencing the fact of foreclosure. While we do not condone the court's action, we agree with the Baumans' contentions that ultimately the Days were not prejudiced: "Any problem was cured by the Days' subsequent motion and hearing on the motion for reconsideration, through which the Days were allowed to present any arguments and materials in support of evicting the Baumans."

**7.** At one point, the Baumans argued before the superior court that the conduct of the foreclosure sale itself was improper on several grounds. The Baumans do not raise these issues on appeal.

**8.** We do, however, acknowledge that a beneficiary who bids in his debt and purchases secured

reason why the personal defenses of an owner cannot result in invalidating a non-judicial sale just as they can result in invalidating the obligation on which the sale was based.[9] The Days are not disadvantaged by this holding. They are protected by means of the "cure" amount ordered by the court. Additionally, if the Days are successful in this litigation and the Baumans fail to make subsequent payments, the Days still have the right to foreclose on the property. However, if the Baumans are successful on their causes of action, they will be able to keep the house that they built and have lived in if they so choose. They would not be limited to money damages. Therefore, we hold that the trial court did not err in using its equitable powers to set aside the foreclosure sale. *In re Alsop,* 14 B.R. 982, 988 (Bankr.D.Alaska 1981), *aff'd,* 22 B.R. 1017 (D.Alaska 1982) (An action to set aside a foreclosure sale is indeed equitable in nature).

## B. REQUIRING A "CURE" OF THE DEFAULT

The Baumans challenge Judge Savell's order that they cure the default, on the ground that the cure amounts to a bond requirement that unconstitutionally restricted their access to the courts. In support of their argument,

the Baumans cite several cases barring courts from requiring parties to deposit funds as a *precondition* to litigation. *See Cameron v. Hughes,* 825 P.2d 882, 884–85 (Alaska 1992); *Patrick v. Lynden Transp., Inc.,* 765 P.2d 1375, 1376–77 (Alaska 1988); *Stokes v. Van Seventer,* 355 P.2d 594, 597 (Alaska 1960); *G.B.B. Invs., Inc. v. Hinterkopf,* 343 So.2d 899, 899 (Fla.App.1977).

These cases are not on point because at all times the Baumans were free to pursue their contract and tort claims whether or not they paid the cure amount. The cure order was part of Judge Savell's equitable arrangement to set aside the non-judicial foreclosure. Therefore, the court did not err in requiring a "cure" of the default.

## C. STATUTE OF LIMITATIONS ISSUES

### 1. *Standard of Review.*

 The superior court decided all of the statute of limitations issues on the Days' motions for summary judgment. When reviewing a grant of summary judgment, this court determines if any genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law.

property at a deed of trust sale has a right to convey clear title to a bona fide purchaser.

Two of the main purposes of AS 34.20.090 are (1) to protect the foreclosure sale purchaser, and (2) to ensure a fair bid price. "If innocent purchasers at foreclosure sales had to face the risk that debtors could easily set aside the sales, then it takes little imagination to realize that participation at foreclosure sales would be significantly and unacceptably chilled." *Rosenberg,* 727 P.2d at 787 (Moore, J. & Rabinowitz, C.J., dissenting).

The specter of this uncertainty of title [would] severely inhibit participation at the foreclosure sale by anyone other than the original creditor, thus depressing bid prices to the general detriment of debtors. [This] would further reduce the willingness of creditors to lend on the security of a deed of trust, to the general detriment of borrowers.

*Id.* (citations omitted).

These concerns are not at issue in this case. The Days themselves purchased the property at the foreclosure sale by means of an offset bid. There is no innocent third-party purchaser involved. When there are no third-party purchasers, the concerns that accompany the setting aside of a non-judicial foreclosure sale do not exist.

**9.** The Days cite an article, Frank Nosek, *The Beginning of Alaska Mortgages and Deeds of Trust,* Alaska J. of Commerce, Feb. 15, 1993, at 2B, that refers to an earlier version of the redemption statute—§ 22–5–3 Alaska Compiled Laws Annotated (ACLA) (1949). The first paragraph of the statute is almost identical to AS 34.20.090(a). The second paragraph contains language providing that

[n]othing herein contained shall prevent the person executing such deed of trust, or his successor in interest, from instituting a proper action, within the time allowed by the statute of limitation, to contest the validity of the deed of trust or the right to the possession of the property sold thereunder.

The article indicates that this legal challenge provision was eliminated in 1957 because it would make non-judicial foreclosure sales final and more attractive to lenders. We conclude that the 1949 version of the redemption statute is ambiguous. Additionally, we have found no legislative history indicating the purpose for the elimination of the legal challenge language. Most importantly, as stated earlier, the Baumans' cause of action is based on the underlying contract, not the redemption statute.

*Wright,* 824 P.2d at 720. We make all inferences of fact in favor of the nonmoving party. *Id.* We review questions of law *de novo,* adopting the rule of law that is most persuasive in light of precedent, reason, and policy. *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

### 2. The Statute of Limitations for Real Property Claims.

The Baumans first contend that their action is one "for the determination of a right or claim to or interest in real property," AS 09.10.230, and that the ten-year statute of limitations for real property actions therefore applies.[10] The Baumans rely on *Carter v. Hoblit,* 755 P.2d 1084 (Alaska 1988), which holds that a fraud victim need not have acted reasonably in order to obtain the benefit of AS 09.10.230's statutory discovery rule.[11] *Id.* at 1087. The Baumans argue that the fraudulent conduct in *Carter* is similar to the Days' alleged fraudulent conduct.

Alaska Statute 09.10.230 contemplates a dispute over an interest in real property. For example, in *Carter* a group of three individuals intended to purchase a piece of property and hold title jointly, but the group member who conducted the transaction took the deed in his name alone, without informing the others. *Id.* at 1085. Thus, the nature of the ownership interest was in fact the central issue: Was there a tenancy in common or partnership requiring the one party to convey one-third interests to the other two? *Id.* at 1085–86.

The Baumans' fraud and contract claims do not concern any interest in the Green Acres property. Rather, the dispute here, as the Baumans themselves admit in their brief,

is whether the Days' misrepresentations "induced the Baumans to obtain an interest in real property which the Baumans would otherwise have had no interest in obtaining." At issue is not the ownership interest itself but improprieties in the bargaining that resulted in the conveyance of that interest to the Baumans. Therefore this action is not one to which the statute of limitations for real property actions applies.

The Baumans also contend that because they seek to retain title and possession to the Green Acres property, their action concerns an interest in real property. They misconceive the relationship between the foreclosure and their other claims. The dispute over title and possession arose from the foreclosure sale, while the contract and fraud claims arose from the original sale of the property.

### 3. The Baumans' Fraud Claim.

Claims for fraud and misrepresentation are tort claims, and thus are subject to the two-year statute of limitations provided in AS 09.10.070.[12] *Sharrow v. Archer,* 658 P.2d 1331, 1333 n. 3 (Alaska 1983); *Austin v. Fulton Ins. Co.,* 444 P.2d 536, 539 (Alaska 1968). For tort claims, the "discovery rule" establishes when the limitations period starts to run:

> Where the plaintiff does not actually know of the existence of elements essential to her cause of action, . . . the limitations period does not begin to run until "a reasonable person [in like circumstances would have] enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights."

10. Alaska Statute 09.10.230 provides in part: "No person may bring an action for the determination of a right or claim to or interest in real property unless commenced within the limitations provided for actions for the recovery of the possession of real property." The limitations period for a suit to recover possession of real property is ten years. AS 09.10.030.

11. Alaska Statute 09.10.230 expressly provides a discovery rule: "In an action upon a . . . fraud, or mistake, the running of the time within which an action may be commenced starts from . . . the discovery of the fraud or mistake." It is unclear

why the Baumans rely on this discovery rule, because if their fraud claim is otherwise within the scope of AS 09.10.230, it will not be barred by the ten-year statute of limitations of AS 09.10.030.

12. Alaska Statute 09.10.070 provides in part: "No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise . . . unless commenced within two years."

*Lee Houston & Assocs. v. Racine,* 806 P.2d 848, 851 (Alaska 1991) (quoting *Mine Safety Appliances Co. v. Stiles,* 756 P.2d 288, 291 (Alaska 1988)); *see also State, Dep't of Corrections v. Welch,* 805 P.2d 979, 981–82 (Alaska 1991) (statute of limitations does not begin to run until the plaintiff discovers or reasonably should discover the "existence of all elements of his cause of action").[13] The trial court concluded that the statute of limitations barred the Baumans' tort claims, because the point at which the Baumans reasonably should have discovered that the land was laden with permafrost was 1988, when the Baumans stopped paying their property taxes.

▮▮▮▮ The Baumans first argue that because they made contradictory statements about the discovery of the permafrost, summary judgment as to when the limitations period started was improper. A court must deny a motion for summary judgment if "there is contradictory evidence, or the movant's evidence is impeached on material matters," because in such cases an issue of credibility exists. *Wilson v. Pollet,* 416 P.2d 381, 384 (Alaska 1966). Nonetheless, in order to defeat a summary judgment motion, the non-movant must present evidence that *reason-*

*ably* tends to dispute or contradict the movant's evidence. *Yurioff v. American Honda Motor Co.,* 803 P.2d 386, 389 (Alaska 1990).

▮▮▮▮ The evidence presented in support of the summary judgment motion included the affidavit in which the Baumans admitted that they stopped paying property taxes because of the permafrost problems. The allegedly contradictory evidence comes from Robert Bauman's deposition testimony, in which he states that he first became aware of the permafrost in 1989 or 1990. Significantly, he did not deny the truth of the statements in the affidavit, and the affidavit remains uncontradicted. In order for his testimony to be contradictory, it would have to dispute or contradict the earlier affidavit. *See, e.g., Wilson,* 416 P.2d at 383–85 (finding a genuine issue of fact as to the identity of the driver involved in an auto accident, where the movant stated in her affidavit that though she was not the driver, she had told the police otherwise). Because Bauman's deposition statement was a mere equivocation, it did not reasonably tend to dispute or contradict the affidavit. *See Yurioff,* 803 P.2d at 389.[14] Therefore, summary judgment on the

---

**13.** The Baumans allege that in actions for fraud, this court's decision in *Palmer v. Borg–Warner Corp.,* 838 P.2d 1243 (Alaska 1992), replaces the *Lee Houston* "reasonable person" standard with an "actual knowledge" standard. In the context of a due diligence requirement for equitable estoppel, *Palmer* states that "a party should be charged with knowledge of [a] fraudulent misrepresentation or concealment only when it would be *utterly unreasonable* for the party not to be aware of the deception." *Id.* at 1251 (emphasis added). However, nothing in *Palmer* relaxes the "reasonable person" standard so much as to allow the statute of limitations to run only when the person has actual knowledge of the fraud.

Moreover, even if we were to require actual knowledge, the requirement would be satisfied by "express cognition, or awareness implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry.'" *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677, 681 (1981) (citations omitted). The Baumans certainly had this sort of knowledge by 1988, the year that they stopped paying their property taxes in the belief that permafrost had reduced the value of their property.

**14.** In *Yurioff,* the driver of an all-terrain vehicle filed a products liability claim after suffering

injuries in an accident. The defendants sought summary judgment, arguing that the statute of limitations barred the action. *Id.* at 388. An issue critical to the court's consideration was whether the accident occurred on March 19 or March 20. The defendants presented the following evidence in support of their allegation that the accident occurred on the earlier date: records from the medical clinic that treated the driver, deposition testimony from medical personnel authenticating the records, and the driver's own deposition testimony. In rebuttal, the driver presented only his own deposition testimony stating that he thought the accident took place on the later date. This court concluded that this testimony, though it "rendered equivocal Yurioff's admission that the accident occurred on March 19," did not reasonably tend to dispute or contradict the defendants' authentic documentation of the date of the accident. *Id.* at 389.

Unlike the defendants in *Yurioff,* the Days rely solely on the Baumans' affidavit to establish that the Baumans knew about the permafrost in 1988, and do not provide further documentary evidence. Nonetheless, because Robert Bauman's equivocal deposition testimony does not directly challenge or deny the statements in the affidavit, the *Yurioff* rule is applicable here.

tort claims was proper.[15]

#### 4. The Baumans' Contract Claim.

The Baumans urge this court to apply the discovery rule to the six-year statute of limitations for contract claims.[16] Generally, the statute of limitations for an action in contract starts to run at the time of the breach. *Howarth v. First Nat'l Bank*, 540 P.2d 486, 490–91 (Alaska 1975), *aff'd on reh'g*, 551 P.2d 934 (Alaska 1976). If the general rule applied here, the statute of limitations would have begun to run when the Baumans purchased the property in 1984. Their claims would be untimely. If the discovery rule applied instead, the limitations period would have begun in 1988. The Baumans' contract claims would be timely.

The Days contend that this court rejected extension of the discovery rule beyond tort claims in *Armour v. Alaska Power Authority*, 765 P.2d 1372 (Alaska 1988). In *Armour*, this court concluded that the Uniform Commercial Code (U.C.C.), as adopted under Alaska statutory law, did not permit application of the discovery rule to a U.C.C. claim for breach of warranty: "We have created a discovery rule . . . for certain tort causes of action. However, we have never extended the discovery rule to contract causes of action for breach of warranty under the U.C.C." *Id.* at 1375. *Armour* recognized a compelling reason for not extending the discovery rule in that specific situation. Its application would "effectively repeal AS

45.02.725(b)," which states that a breach of warranty occurs at the time that the seller tenders the defective goods to the buyer. *Id.* The *Armour* court was silent on whether the discovery rule might apply to a *common-law* contract action, such as that which the Baumans raise here.

Other jurisdictions are divided on extending the discovery rule to contract claims. Many retain the general rule that the statute of limitations starts to run at the time of the breach, and that the plaintiff's ignorance as to the existence of a cause of action is irrelevant. *See, e.g., Stephens v. Creel*, 429 So.2d 278, 280 (Ala.1983); *Pizel v. Zuspann*, 795 P.2d 42, 54 (Kan.), *modified on other grounds*, 247 Kan. 699, 803 P.2d 205 (1990); *State v. Holland Plastics Co.*, 111 Wis.2d 497, 331 N.W.2d 320, 325 (1983). Utah has crafted a very narrow exception for cases where applying the general rule would be "unjust or irrational," such as when the plaintiff has no choice but to bring suit after the limitations period has run. *Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1373–74 (Utah 1987). Many other states have extended a limited but broader discovery rule to contract claims, and especially to suits for breach of a construction contract, where the plaintiff neither knew nor reasonably should have known about the breach. *See, e.g., Matusik v. Dorn*, 157 Ariz. 249, 756 P.2d 346, 348 (1988); *April Enter. v. KTTV*, 147 Cal. App.3d 805, 195 Cal.Rptr. 421, 434–37 (1983);

---

**15.** The Baumans also argue that they delayed filing suit in reliance on the Days' representations that the matter could be resolved without litigation, and that principles of equitable estoppel thus bar the Days from relying on the statute of limitations. As the Days correctly note, the alleged representations occurred in 1991, well after the statute of limitations had run. The Baumans offer no evidence of similar representations made before 1988. Therefore, the equitable estoppel argument must fail.

The Baumans also argue that in 1992 they discovered evidence of further fraudulent conduct. The evidence that the Baumans allege to be newly discovered relates to the fraud issues that they attempted to raise in their second amended complaint. To the extent these claims are related to the permafrost issue, they merely attempt to revive the time-barred fraud claims. To the extent they are *unrelated* to the permafrost issue, we need not address them, since we also

affirm the superior court's denial of leave to file the second amended complaint. *See infra.*

Finally, the Baumans argue that the trial court erred in entering final judgment, because their defensive claims were not subject to the statute of limitations and still remained to be litigated. The only affirmative defenses that the Baumans raised were in response to the Days' February counterclaim for eviction, a counterclaim possible since the foreclosure sale had not yet been set aside. Since we uphold the superior court's decision to set aside the foreclosure, these defenses are no longer relevant. Once the superior court set aside the foreclosure, the Days no longer had an action for eviction, and the affirmative defenses were no longer relevant to the case. Therefore, final judgment was proper.

**16.** According to AS 09.10.050, "[n]o person may bring an action (1) upon a contract or liability, express or implied . . . unless commenced within six years."

*McKinley v. Willow Constr. Co.*, 693 P.2d 1023, 1026 (Colo.App.1984); *Swaw v. Ortell*, 137 Ill.App.3d 60, 92 Ill.Dec. 49, 484 N.E.2d 780, 789 (1984); *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677, 680 (1981); *Puritan Medical Ctr. v. Cashman*, 413 Mass. 167, 596 N.E.2d 1004, 1009–10 (1992); *Hebron Pub. Sch. Dist. v. United States Gypsum Co.*, 475 N.W.2d 120, 126 (N.D.1991); *Boghossian v. Ferland Corp.*, 600 A.2d 288, 290 (R.I.1991); *Santee Portland Cement Co. v. Daniel Int'l Corp.*, 299 S.C. 269, 384 S.E.2d 693, 696 (1989).

Jurisdictions that have extended the discovery rule to breach of contract cases often balance the traditional purposes for statutes of limitation against the plaintiff's interest in pursuing an action and asserting her rights. *See, e.g., Poffenberger*, 431 A.2d at 680; *Santee Portland Cement*, 384 S.E.2d at 694. The most common policy argument for extension is that the defendant should not be able to profit from the plaintiff's ignorance in cases where

> [t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect[, particularly where] the defendant has been in a far superior position to comprehend the act and the injury ... [or] had reason to believe the plaintiff remained ignorant he had been wronged.

*April Enter.*, 195 Cal.Rptr. at 436; *see also Hebron Pub. Sch. Dist.*, 475 N.W.2d at 122–23.

These situations are easily distinguishable from the typical breach of contract cases that come within the ambit of the U.C.C.:

> In the typical contract for purchase of widgets, for example, the buyer is well aware the contract has been breached when the date for delivery arrives and he has not received his widgets. Similarly, the seller knows when payment is due under the contract. If that time passes without receipt of the amount due he is easily aware that the contract has been breached.

17. *See Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

18. Alaska Civil Rule 60(b) states in part:
 On motion and upon such terms as are just, the court may relieve a party or his legal

*April Enter.*, 195 Cal.Rptr. at 436. However, in a case where, for example, the plaintiff alleges faulty construction of a house, the defect in question may remain hidden for some time.

■ We find the policy reasons supporting application of the discovery rule to common law contract cases persuasive. A defendant should not be allowed to profit from a plaintiff's ignorance merely because the defendant's cause of action is based on a common law contract theory rather than a tort theory. Therefore, we hold that in the absence of a statute directing a contrary rule, the discovery rule is applicable to common law contract causes of action.

Construed in the light most favorable to the Baumans,[17] the evidence indicates that the Days offered for sale land that they represented to be free of permafrost. In reality, the land was not permafrost free, and the Baumans did not receive the benefit of their bargain. They did not discover this fact until they built on the property and problems began to arise, because the presence of permafrost is not something that they could ascertain merely by observing the property. The Baumans were cognizant of the permafrost problems in 1988. They had six years from that time to bring their contract causes of action. They filed suit in 1992. Accordingly, their contract causes of action are not time barred. Therefore, the trial court erred in dismissing the Baumans' contract claims on summary judgment.

### D. THE BAUMANS' MOTION FOR RELIEF FROM JUDGMENT AND LEAVE TO FILE A SECOND AMENDED COMPLAINT

■ The Baumans argue that a new development in the law, occurring after entry of judgment but before the expiration of the time that they had to appeal, mandates relief from the judgment under Alaska Civil Rule 60(b)(1) or (5).[18] *See Lawrence v. Lawrence*,

representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise or excusable neglect;
....

718 P.2d 142, 145–47 (Alaska 1986) (discussing the general requirements of Rule 60(b)(1) & (5)). This court will reverse the trial court's denial of a Rule 60(b) motion only for an abuse of discretion. *Gregor v. Hodges,* 612 P.2d 1008, 1009–10 (Alaska 1980) (per curiam).

The new development in the law that the Baumans cite is *McGill v. Wahl,* 839 P.2d 393 (Alaska 1992). The Baumans claim that *McGill* supports their contention, discussed *supra,* that the ten-year statute of limitations of AS 09.10.230 would apply to their action. The Baumans are wrong. *McGill* involved a prescriptive easement claim, and thus an interest in real property. *Id.* at 396. No such interest is at issue here. Again, the Baumans have improperly tied the foreclosure action with their tort and contract claims, when in fact the foreclosure is unrelated to them.

 In the alternative, the Baumans argue that because they allegedly discovered additional acts of fraud in 1992, the judgment should not have prospective application, and relief is appropriate under Rule 60(b)(5) or (6). While Rule 60(b)(5) can apply to any final judgment with prospective effect, *Lawrence,* 718 P.2d at 146, by definition it cannot apply to a judgment that simply offers a present remedy for a past wrong. *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2863, at 205 (1973).

 The Baumans do not explain how the final judgment here has prospective effect. Presumably they refer to the fact that the final judgment dismissed their complaint with prejudice. However, the preclusive effect of a dismissal with prejudice is not a

prospective effect for the purposes of Rule 60(b)(5). *See, e.g., Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138–40 (D.C.Cir.1988) (interpreting identical federal rule).

 The Baumans also claim that even if relief is improper under Rule 60(b)(5), it is proper under Rule 60(b)(6). Relief under Rule 60(b)(6) is available only in extraordinary circumstances, and only when clauses (1)–(5) of the rule do not apply. *Village of Chefornak v. Hooper Bay Constr. Co.,* 758 P.2d 1266, 1270 (Alaska 1988). Because the Baumans offer no reason at all for relief under Rule 60(b)(6), their contention is groundless.[19]

### E. ATTORNEY'S FEES

The superior court awarded the Days $6,700 in attorney's fees and $1,620.62 in costs, without comment. Because we reverse a substantial portion of the superior court's decision we vacate its award of attorney's fees. A determination of who is the prevailing party and the proper amount of attorney's fees to be awarded will need to be determined by the superior court after a final decision is made on the merits of the case.

### III. CONCLUSION

We AFFIRM the trial court's use of its equitable powers to set aside the non-judicial foreclosure as well as its requirement of a "cure." We also AFFIRM the trial court's rulings that the Baumans' claims for fraud are barred by the applicable statutes of limitations and that the ten-year statute of limitations for actions involving an interest in real property does not apply here. Addition-

---

(5) … it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation from the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in Civil Rule 58.1(c).

19. The Baumans also moved for leave to file a second amended complaint under Alaska Civil Rule 15(a). The trial court denied them leave to amend. The Baumans make no argument as to

the application of Rule 15(a) in their appellate brief. Though a section of the brief purports to raise issues under both Rule 15 and the provisions for relief from judgment under Rule 60, the Baumans discuss only Rule 60 issues. The Baumans' first arguments regarding entitlement to file their second amended complaint appear in the reply brief. We find that, since the Baumans argued this point on appeal only in the reply brief and not in the opening brief, the Baumans have waived this argument. *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

ally, we AFFIRM the denial of relief from judgment and the denial of leave to file a second amended complaint. We REVERSE the trial court's ruling that the Baumans' contract claims are barred by the applicable statute of limitations. We also VACATE the award of attorney's fees and costs.

MOORE, C.J., and BRYNER, J. pro tem., dissent in part.

MOORE, Chief Justice, dissenting in part.

I dissent from parts II.A and II.C.4 of the majority opinion. The majority's willingness to set aside a valid deed of trust sale and to adopt a broad discovery exception to the statute of limitations for contract actions will decrease certainty in commercial transactions in Alaska. This case does not necessitate deviation from the clear statutory language governing both issues.

## I.

The majority accurately cites AS 34.20.070–.090, the relevant statutes governing the foreclosure sale. Alaska Statute 34.20.070(b) specifically gives the party executing the deed of trust (in this case, the Baumans) the right to cure a default *before* the foreclosure sale. However, AS 34.20.090(a) states that *after* the foreclosure sale, "*the party executing the deed of trust or the heirs or assigns of that party have no right or privilege to redeem the property, unless the deed of trust so declares.*" (Emphasis added).

As the majority recognizes, the Baumans concede that the foreclosure sale in this case was conducted in accordance with AS 34.20.070–.080. Op. at 823. The majority attempts to get around this fact by stating that "[t]he Baumans are not attempting to redeem property. Rather, the Baumans are suing on the underlying sales contract." Op. at 823–824. This distinction is meaningless in this case. It is true that the Baumans are not simply trying to cure the default to get their property back; they are instead seek-

ing to have the purchase contract reformed to reflect the true value of their property. However, the majority cites absolutely no authority for the proposition that a complaint based on the underlying contract is grounds for overturning a valid foreclosure.

The majority cites *Rosenberg,* 727 P.2d at 783–84, for the proposition that "substantial defects such as the lack of a substantive basis to foreclose in the first place will make a sale void." If the majority is implying that there was not a substantive basis to foreclose in the present case, then it is mistaken. The Days had a right to foreclose because the Baumans defaulted. The Baumans could have avoided the foreclosure by paying the debt owed on the property while pursuing their contract and tort actions for damages. Instead, they exercised impermissible self-help by unilaterally deciding to stop making payments. It is a short-sighted policy decision to encourage such self-help in the future by creating doubt as to the finality of foreclosure sales.[1]

The deed of trust is a device designed to make foreclosure simpler and less costly than judicial foreclosure for both the secured party and the judicial system. Its use will be disfavored if the secured party can no longer rely upon a validly executed foreclosure following non-payment of the note. Under the majority opinion in this case, a secured party would be forced to try to unload the collateral as quickly as possible to a bona fide purchaser, possibly at less than market value, to prevent having the foreclosure sale overturned. I see no compelling reason to risk such a result by ignoring Alaska's nonjudicial foreclosure statutes, particularly when the Baumans had adequate remedies which they failed to exercise.

## II.

I also dissent, on several grounds, from the majority's decision to adopt a broad discovery rule for contract actions. First, I would

---

1. The Baumans may have been able to avoid foreclosure without making payments by asking the court in a timely manner to enjoin the foreclosure sale. The Baumans moved for a temporary injunction on the day of the foreclosure sale. The superior court denied their motion as moot. Although it is unclear whether the foreclosure sale had already occurred when their motion was denied, the Baumans do not challenge the court's mootness decision on appeal.

charge the Baumans with constructive notice of the permafrost in 1984, thus barring their claim even under the discovery rule adopted by the majority. Secondly, I find the majority's discovery rule to be far too broad in both the type of claim to which it applies and the length of the extension of time in which to file.

### A.

In their second amended complaint, the Baumans alleged:

During the summer of 1992, while researching records at the Fairbanks North Star Borough, the [Baumans] first discovered that while [the Days] had only provided [the Baumans] with a copy of a small portion of the sub-division plat, that pertaining to Tract L, the sub-division plat on file at the Borough indicated that the property was underlaid with Minto soils, which are well-known to harbor significant amounts of permafrost.

The Baumans thus admitted that they could have discovered the existence of permafrost on the land in 1984 simply by examining the subdivision plat. The deed of trust even described the property as "Tract 'L' of the GREEN ACRES SUBDIVISION, *according to the plat filed October 3, 1976 as Plat no. 76–126*, Records of the Fairbanks Recording District." (Emphasis added). It is not unreasonable to expect the Baumans to have examined the subdivision plat, given that the deed of trust's description specifically referenced that plat, and given that the Baumans claim to have been extremely concerned at the time of purchase with the issue of permafrost. Therefore, I would hold that the Baumans had constructive notice of the permafrost as of the time of purchase in 1984, and the six-year statute of limitations began to run at that time.

### B.

The majority holds that the discovery rule is applicable to all common law contract causes of action, absent a statute to the contrary. Op. at 25. Under this approach, the plaintiff has six years to file suit, regardless of the nature of the claim or the time that has elapsed before discovery. I find two major faults with the majority's liberal approach to the contract discovery rule.

First, I would distinguish between allegations of knowing versus innocent misconduct by the breaching party. A person who knowingly takes advantage of the other party by failing to disclose relevant information is not worthy of protection. However, I do not believe that the discovery rule should be extended to innocent breaches of a contract. The rights of an innocent, aggrieved plaintiff must be balanced against the defendant's right to achieve finality in contracts. Such finality is only achieved when a party who has not knowingly taken advantage of the other party is entitled to peace of mind upon arrival of a certain day. Furthermore, as time passes, the defendant's ability to mount a viable defense may be weakened.

This problem of prejudice to the defendant's case is further exacerbated by the second major problem with the majority's approach: the provision for a six-year period in which to sue regardless of when "discovery" occurs. According to my interpretation of the majority's approach, if a buyer of a home discovered a breach in the contract fifteen years after the purchase, the buyer could sue the seller as late as 21 years after the purchase. As previously discussed, part of my objection to such a scenario is that the seller should not be subjected to litigation for innocent breaches more than six years after the sale—i.e., the discovery rule should not apply at all to such a case. In addition, I vigorously object to the allowance of six additional years to sue.

We have previously recognized that "statutes [of limitation] are intended to encourage prompt prosecution of claims and thus avoid injustices which may result from lost evidence, faded memories and disappearing witnesses." *Lee Houston & Assocs. v. Racine*, 806 P.2d 848, 855 (Alaska 1991) (citing *Haakanson v. Wakefield Seafoods*, 600 P.2d 1087, 1090 (Alaska 1979)). Regardless of whether the claim "discovered" sounds in tort or in contract, any tolling of the statute of limitations under the discovery rule will necessarily increase the very prejudice to the defendant that the statute is designed to avoid.

Therefore, the amount of additional time for which the limitation period is extended should be minimized.[2]

The statute of limitations is six years for contracts but only two years for torts because an action on a contract is based on documentary evidence which is less likely to grow stale. *See Lee Houston,* 806 P.2d at 855. The legislature, weighing potential prejudices to both the plaintiff and defendant, has arrived at the six-year limitation period for contract actions. Presumably, once this period has expired, the prejudice to the defendant outweighs the prejudice to the plaintiff. Therefore, even if circumstances call for the application of the discovery rule to a contract claim, I would not allow the plaintiff to file beyond the later of two years from discovery or the expiration date for the original six-year period.[3] I find it ridiculous to allow an additional six years from whenever discovery occurs.

BRYNER, Justice Pro Tem., dissenting in part.

I concur in Chief Justice Moore's dissent to Part II.A. In all other respects, I agree with the opinion of this court.

2. When the discovery rule is applied to tort actions, the plaintiff is given *two* additional years from the time of discovery in which to file. Similarly, Alaska's disability statute, AS 09.10.140, gives a formerly under-age or incompetent plaintiff *two* years to sue upon reaching the age of majority or becoming competent.

3. I understand that my recommendation may appear to encroach on the function of the legislature. My proposal, however, is at least consistent with the policies underlying the legislature's adoption of a six year statute of limitation. The majority is engaged in wholesale judicial legislation by extending the limitations period to six years from discovery and thereby ignoring the policy considerations behind a six-year statute.