**Dahlie A. PLUMBER, Appellant,**

v.

**UNIVERSITY OF ALASKA ANCHORAGE,
Appellee.**

No. S–7024.

Supreme Court of Alaska.

April 18, 1997.

---

Hugh W. Fleischer, Hedland, Fleischer, Freidman, Brennan & Cooke, Anchorage, for Appellant.

Mark E. Ashburn, Ashburn & Mason, Anchorage, for Appellee.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

*OPINION*

CARPENETI, Justice Pro Tem.

## I. *INTRODUCTION*

■ Dahlie Plumber (Plumber) appeals the superior court's affirmance of the decision by the Chancellor of the University of Alaska, Anchorage (UAA) to dismiss Plumber's grievance. We affirm the superior court's decision to uphold the chancellor's action, but do so for reasons different from those relied upon by the superior court.[1]

## II. *FACTS AND PROCEEDINGS*

Dahlie Plumber was the Manager of Computer Operations for UAA. She sued the university and three university administrators in federal court on August 4, 1993, alleging racial and sexual discrimination, breach of contract, intentional infliction of emotional distress and other claims. On August 23, 1993, Plumber received an unfavorable Performance Appraisal from Dr. Elaine Ader, one of Plumber's superiors.[2]

On September 7, Plumber's counsel wrote to the university claiming that the poor evaluation was given in retaliation for the lawsuit and indicating that plaintiff was reevaluating her position and would amend the complaint to add a count for retaliation. Plumber amended the complaint on September 16, and did add a claim for retaliation.

On October 11, the university offered to settle all claims against all defendants in the federal action for a lump sum payment. Plumber accepted the offer on October 18. An amended final judgment was entered in federal district court on November 8.[3]

At the time the federal suit was settled a university regulation set a minimum standard for the award of annual salary increments. Regent's Policy 04.05.01(B)(4) provided:

The salary structure for administrative/professional/technical positions shall be a set of ranges organized in a matrix for purposes of placement and movement. Movement within each range will be accompanied by a minimum 3 percent annual salary increase. *All recipients of annual in-range salary increments shall have at least a satisfactory performance evaluation.*

(Emphasis added.) This policy was last revised in 1990, and was still in effect at the time of this appeal.

On January 2, 1994, ·Plumber failed to receive a three percent cost-of-living increase because her latest evaluation, the evaluation of August 23, 1993 rated her below "Satisfactory." On January 5, she sent a grievance to the university governance office which stated: "I am filing this grievance because of the unfair manner in which my previous employee evaluation was rated." The *only* matter she grieved on January 5 was the August evaluation (although Plumber noted that the evaluation had been signed by Dr. Beeton, the university president, on December 9, 1993). At that point, Plumber and the university entered into the grievance process, which included an attempt at informal resolution. Plumber rejected the proposed resolution by appealing to the grievance council. Plumber's appeal contained a more lengthy statement of the grievance.[4] Her opening paragraph reads in full:

The grievance concerns the August 23, 1993, appraisal of performance of grievant by Dr. Ader in which the overall rating was "needs improvement" and resulted in

---

1. In affirming a judgment, a reviewing court may rely upon grounds different from those used by the administrative agency. *See, e.g., ASEA v. APEA*, 825 P.2d 451, 458 (Alaska 1991); *Ehrlander v. State, Dep't of Trans.*, 797 P.2d 629, 636 n. 18 (Alaska 1990).

2. Plumber's overall rating was "Needs Improvement."

3. Plumber received $100,000, including interest, plus an amount for costs incurred in bringing the suit, including reasonable attorney's fees, from the university. The settlement was not an admission that UAA was liable, nor was it an admission that Plumber had suffered any damage.

4. In this statement of her grievance, Plumber alleged that in various respects her August evaluation had violated several university policies and regulations. She sought a three percent salary increase retroactive to January 2, 1994, an "appropriate" evaluation, expungement of the current evaluation from her university employment records, and attorney's fees and costs.

the loss of a 3% salary increase effective on or about January 2, 1994.

At the completion of the formal grievance process the university grievance council recommended to the chancellor that the grievance be dismissed on the grounds that it was not in proper form under Regents' Policy 04.08.08(IV)(C)(3) and (4). The chancellor adopted this recommendation. In addition, he rested denial of the grievance on the further ground that the grievance was not timely under Regents' Policy 04.08.08.

Plumber appealed the final decision of the chancellor to the superior court. That court held that the grievance was timely and was not barred by the doctrine of *res judicata,* but that the grievance was properly dismissed because it was not in the proper form.

Plumber appeals that decision to this court.

## III. *DISCUSSION*

### A. *Standard of Review*

█ This case involves an appeal from a decision of the superior court acting as an intermediate court of appeal. In such a case, we will "approach the issues independently," *Union Oil Co. of California v. State, Dep't of Revenue,* 560 P.2d 21, 23 n. 5 (Alaska 1977), giving "[n]o deference ... to the superior court's decision." *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992) (citing *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987)). *See also Jager v. State,* 537 P.2d 1100, 1106 (Alaska 1975); *State v. Marathon Oil Co.,* 528 P.2d 293, 298 (Alaska 1974).

### B. *Res Judicata*

█ The doctrine of *res judicata* as adopted in Alaska provides that a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action. *Blake v. Gilbert,* 702 P.2d 631, 634–35 (Alaska 1985). *See also DeNardo v. Municipality of Anchorage,* 775 P.2d 515, 517 (Alaska 1989).

Because all of these elements are present here, the doctrine bars Plumber's appeal.

### 1. *Final judgment*

█ The federal district court's judgment was a final judgment on the merits. That it was based on an accepted offer of judgment in no way diminishes the effectiveness of the resulting final judgment. Indeed, this court has held that a stipulation to dismiss claims with prejudice is sufficient for *res judicata* purposes: "[A] stipulation [to dismiss claims with prejudice] is just as valid as a final judgment resulting from a trial on the merits, and is res judicata as to all issues that were raised or could have been determined under the pleadings." *Tolstrup v. Miller,* 726 P.2d 1304, 1306 (Alaska 1986).

### 2. *Court of competent jurisdiction*

There is no question that the federal district court is a court of competent jurisdiction.

### 3. *Same parties, same cause of action*

█ The same parties are present here as in the federal district court case: Dahlie Plumber and the University of Alaska. While the same issue is involved—whether the August, 1993, evaluation was unfair and retaliatory—the causes of action are based on alleged violations of different laws. In the federal court case Plumber alleged in relevant part that the poor evaluation was in retaliation for her lawsuit and therefore violated the Alaska Whistleblower Act, AS 39.90.100(a). In her grievance, which appeal is presently before us, Plumber claimed that the motivation behind the evaluation and the manner in which it was conducted violated several university policies and regulations. Under these circumstances, it might be thought that the causes of action are not the same.

█ However, *res judicata* bars not only relitigation of the same cause of action, but also new claims arising from the same transactions as those in the first suit. The same transaction, the August, 1993 evaluation of Plumber, is at issue in both the first suit in federal court and the present appeal in state

court. "A final judgment extinguishes all claims 'with respect to all or any part of the transaction, or series of connected transactions' out of which the previous action arose. *Restatement (Second) of Judgments* § 24 (1982)." *Tolstrup*, 726 P.2d at 1306. What factual grouping constitutes a "transaction" is determined by "whether the facts are related in time, space, origin, or motivation," and "whether they form a convenient trial unit." *Restatement (Second) of Judgments* § 24(2) (1982).

Plumber's August, 1993 evaluation (the motivation for it, the circumstances surrounding it, and the actual evaluation) is the only transaction at issue in this case. The events are closely related in time, space, origin and motivation and form a convenient trial unit. The events occurred within a short period of time, and are all directly related to the evaluation. The same facts, evidence and witnesses would be produced to prove a violation of the Alaska Whistleblower Act as those produced to prove violations of university policies and regulations. At issue in both the first and second suit is whether there was an improper motive in giving Plumber a poor evaluation, even if the theories of liability (violation of the Whistleblower Act or violation of university policies) differ. Because the same transaction was at issue both in the federal court suit and in the present appeal, *res judicata* bars Plumber's present claim.

■ Plumber seeks to avoid the conclusion that her grievance is barred by *res judicata* by arguing that she was unaware of one of the effects of the August 1993 evaluation, that it would result in her losing a salary increase until after she entered into the settlement. Because she was unaware of one of the effects of the August 1993 evaluation, Plumber argues, she did not have an opportunity to litigate the issue. Under the holding of *Cameron v. Beard*, Plumber argues that she should not be barred by *res judicata*. *Cameron*, 864 P.2d 538, 545 (Alaska 1993) ("[R]es judicata does not apply when

one party has not had an opportunity to litigate an issue.").

■ It is true that *res judicata* does not act as a bar when the conduct giving rise to the second suit occurs after the conclusion of the first suit. *Restatement (Second) of Judgments* § 24 cmt. f (1982); *see Pankratz v. State, Dep't of Highways*, 652 P.2d 68, 73–74 (Alaska 1982). Plumber failed to receive a cost of living increase on January 2, 1994, after the conclusion of the first lawsuit. However, Plumber's argument is incorrect for three reasons.

First, it is clear that university regulations in place throughout the period in question barred cost-of-living increases for employees who did not maintain at least "satisfactory" ratings.[5] Plumber, a long-time university employee of fairly high ranking, is presumed to be aware of the regulations as a general matter. Moreover, there is a clear suggestion that at least Plumber's counsel during the federal court litigation was aware of the effects of not receiving a satisfactory rating. In the letter of September 7 which counsel sent to the university complaining about the poor evaluation, counsel argued that Plumber was "being singled out for a barrage of memoranda, and critical written materials, which seem clearly designed to ... *justify future and further adverse actions.*" (Emphasis added.)

■ Second, even if Plumber was entirely unaware of Regent's Policy 04.05.01(B)(4), ignorance of the *effects* of a final judgment is immaterial in determining whether *res judicata* applies. It is the general rule that

> if a plaintiff who has recovered a judgment against a defendant in a certain amount becomes dissatisfied with his recovery and commences a second action to obtain increased damages, the court will hold him precluded; his claim has been merged in the judgment and may not be split.... It is immaterial that in trying the first action he was not in possession of enough information about the damages, past or prospective, or that the damages turned out in

---

5. The regulation involved here, Regents' Policy 04.05.01(B)(4), provides that "[a]ll recipients of annual in-range salary increments [the three percent increase] shall have at least a satisfactory performance evaluation." The affidavit provided by the university affirmed that the regulation was "in effect from August of 1993 through January of 1994."

fact to be unexpectedly large and in excess of the judgment.

*Restatement (Second) of Judgments* § 25, cmt. c (1982). As UAA persuasively argues in its reply brief:

> The fact that Plumber was not aware of one of the financial consequences of a settled claim does not allow Plumber to relitigate the same claim once she becomes aware of that financial consequence. If that were the case, the doctrine of *res judicata* would be eviscerated by a protestation of ignorance by a litigant as to the scope of damage.

Plumber did have the *opportunity* to litigate the poor evaluation: it was an important part of her federal claim. That she did not litigate it further (because of a strategic decision or ignorance or other reason) does not change the fact that she had the opportunity to litigate it. As we noted in *Pankratz*, "Res Judicata prevents the relitigation in a second suit for relief from judgment of matters which were adjudged *or could fairly have been adjudged*" in the first suit. *Pankratz*, 652 P.2d at 74 (quoting *Moran v. Poland*, 494 P.2d 814, 815 (Alaska 1972)) (emphasis in *Pankratz*).

 Third, Plumber's second suit was not based upon *conduct* occurring after she settled with UAA in federal court. While she does claim that she should be given the three percent cost of living salary increase, she does not contend that the regulation denying her the raise was improperly applied given her most recent evaluation. Rather, she challenges the evaluation itself, which occurred before the conclusion of the first suit. As noted above, a review of her grievance leaves no doubt that it arose from the same transaction as her first suit, the August 1993 evaluation. The denial of the cost of living increase was a trigger for the second action, but the validity of the denial was not at issue. As the Restatement provides, it is immaterial that in settling the first suit Plumber was not in possession of enough information about the potential future damages stemming from her evaluation. *Restatement (Second) of Judgments* § 25, cmt. c (1982). The damages she obtained in settlement embody compensation for her entire injury from the eval-

uation. She is barred from relitigating to obtain a better settlement. We hold that her grievance, and this appeal, are barred by *res judicata*.

The superior court denied the *res judicata* claim here on the following reasoning:

> [Plumber] raises a complex of issues she claims to arise because of violations of numerous provisions of the Regents' Policy. One of her allegations claims that Dr. Ader's appraisal was unfair and retaliatory. However, her administrative claim is not limited to that issue. For that reason the Court concludes that this administrative action did not involve the same cause of action as the federal suit. Accordingly, the Court rejects UAA's argument that the doctrine of *Res Judicata* bars [Plumber's] administrative action.

We cannot agree with the reasoning of the superior court. As noted above, a review of Plumber's grievance (as stated both in the January 14, 1994 grievance to Dr. Ader, and the longer appeal to the grievance council of February 23, 1994) leaves no doubt that the *only* subject of her grievance was the August 1993 evaluation. As Plumber herself made clear in filing the grievance, "I am filing this grievance because of the unfair manner in which my previous employee evaluation was rated."

The superior court may have been misled by the fact that Plumber alleged that several Regents' Policies had been violated, but it is crystal clear that, in her words:

> The grievance concerns the August 23, 1993, appraisal of performance of grievant by Dr. Ader in which the overall rating was "needs improvement" and resulted in the loss of a 3% salary increase effective on or about January 2, 1994.

> The Regent's [sic] policies and University regulations which have been violated *by the above action* are as follows.

(Emphasis added.) That Plumber alleged several policies had been violated does not change the essential fact: her grievance concerned only problems which she saw *with the August 1993 evaluation*. The August 1993 evaluation was the subject of the federal

lawsuit. As such, the grievance (and this appeal) are barred by *res judicata*.

We conclude that the *res judicata* issue is dispositive, and that the administrative appeal should have been dismissed by the superior court on *res judicata* grounds. Given this conclusion, it is not necessary to reach the two other issues presented in this appeal.

## IV. *CONCLUSION*

For the reasons set out above, this court AFFIRMS the decision of the superior court.

MOORE, C.J., not participating.