Robert CAYWOOD, Paula Caywood, Michael Caywood, Harold Bryant, Ann Bryant, Jubal Bryant, Melvin Grove, Cheryl Grove, Seth Grove, Tom Anderson, Brad Krueger, Bruce Carter, Greg Shaffer, John Bradshaw, Stephen R. Jones, Jack J. Jones, Daniel McCabe, Ron Woods, Craig, Woods, Jeff Woods, Frank Hollis, William Everett, David Dickey, Davie Malzac, Gregory E. Dabney, and The Alaska Outdoor Access Alliance, Appellants,

v.

STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellee.

No. S–14253.

Supreme Court of Alaska.

Nov. 23, 2012.

Darryl L. Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellants.

Cameron M. Leonard, Senior Assistant Attorney General, Fairbanks, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices, and MATTHEWS, Senior Justice.*

*OPINION*

MATTHEWS, Senior Justice.

## I. INTRODUCTION

The Department of Natural Resources restricted the non-winter use of large vehicles on the Rex Trail. The main question in this case is whether these restrictions are within the Department's authority. Because the Department has broad authority to manage public lands in general and specific authority to manage rights-of-way such as the Rex Trail, and the restrictions do not violate any statutory limitations on this authority, we conclude that they are authorized.

## II. FACTS AND PROCEEDINGS

### A. Facts

The Rex Trail is a route extending some 50 miles between the Parks Highway and the Wood River north of the Alaska Range. Except for a portion about one-and-a-half miles in length nearest the Parks Highway the trail has not been improved. The trail almost exclusively crosses state and federal land. It was established in the early twentieth century as a transportation route to mining claims, and in light of its historic use, the Alaska Legislature has recognized it as an R.S. 2477 right-of-way.[1] In the 1970s the trail was used for access to remote parcels that were made available for sale by the State. The trail has also traditionally been used by hunters to gain access to productive moose habitat. In 2004 the Board of Game legalized antlerless moose hunts on lands adjacent to the trail. The amount of traffic on the trail increased substantially due to this hunt. Many different types of vehicles use the Rex Trail including light 3- and 4-wheel all-terrain vehicles (ATVs) as well as heavier, large-tired and tracked vehicles.

In 2007 the State Department of Natural Resources (DNR) received numerous complaints about the deteriorating condition of the trail. DNR personnel inspected the trail several times and determined that vehicular use of the trail was causing extensive rutting, with some ruts as deep as four feet. They noted that in some places the trail had essentially become a long channel filled with water. In order to avoid ruts, vehicles would create new paths along the trail. These new paths would themselves become rutted resulting in a continual process of widening and degradation. The DNR observers concluded

---

* Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

1. *See* AS 19.30.400(d) (RST Number 0119). The Rex Trail is referred to in this statute as the Kobi–Bonnifield Trail to Tatlanika Creek.

that the rutting of the trail made travel for ATVs and snowmachines both dangerous and difficult. They also noted that the trail conditions were much worse than when they had checked the same route in the winter of 2002.

## B. Proceedings

In May 2008 DNR's northern region manager issued a decision restricting vehicles weighing more than 1,500 pounds from using the Rex Trail every year from April 15 to October 31. The stated goals of the restrictions were "to slow the degradation of access conditions, reduce the risks to public safety during trail travel, and to reduce the potential for more significant resource damage." The restrictions did not include the 1.5 miles of the trail nearest the Parks Highway that have been hardened for general vehicle use. As grounds for the decision, DNR indicated that heavy-vehicle use during the summer was particularly damaging:

> In its current unimproved state, the Rex Trail is most suitable for safe, reliable travel and most resistant to damage in winter, when frozen conditions and snow cover stabilize and protect wet, permafrost-underlain soils. Traditionally, summer motorized use by standard ATVs has not been reliable for continuous access from the highway to Wood River (due to presence of wetlands and river crossings), but was possible in dry years/seasons, and certainly possible in discontinuous sections of the trail.

> In response to public reports of intense seasonal motorized use, increased travel with large off-road vehicles (such as Nodwells and large-tired "moose buggies") and degrading travel conditions on the eastern Rex Trail, DNR conducted an evaluation of information including DNR field work (a preliminary trail condition assessment), land records, current statutes and regulations, scientific studies, varying public reports and concerns, data from other agencies, and possible trail management options. The report documenting this preliminary evaluation (attached to

this decision) noted that the type and intensity of motorized use of the eastern Rex [T]rail has changed in recent years, that travel conditions on the trail are deteriorating due to seasonal rutting and thermal degradation, and that public resources are being damaged and wasted due to off-trail travel. The report also noted that the resource damage which contributes to deteriorating travel conditions cannot be attributed to a single operator or vehicle type—impacts are cumulative, and public interpretations of "damage" vary. Certain conditions on the trail and nearby lands observed this fall and winter, however, are unquestionably due to the operation of wheeled and tracked vehicles larger than standard ATVs or snowmachines. Ruts in excess of 3 feet deep with tracks too wide for an ATV or snowmachine to span, and wide swaths of downed trees left in newly-created trails originating from the Rex represent forms of travel disruption and resource damage above and beyond what is possible for traditional off-road vehicles. The poor trail conditions interfere with traditional travel both in summer (which has always been variable, depending on wet or dry years) and in winter, which has traditionally been very reliable. Most of the summer large equipment use has occurred without DNR permitting, in violation of current regulations. The report listed several options for both short-and long-term management; this decision is based on the most feasible short-term management option evaluated, given the available information.[2]

Robert Caywood and numerous other trail users (Caywood) appealed this decision to the DNR commissioner. The commissioner denied the appeals on August 27, 2009.

Meanwhile, on August 25, 2009, the northern region manager amended the restrictions to allow tracked vehicles heavier than 1,500 pounds to use the trail on an individual permit basis. This modification was made "so that DNR can monitor impacts of this additional use." DNR explained that "[t]he goal

2. State of Alaska, Department of Natural Resources, Division of Mining, Land and Water, Northern Region, Administrative Decision, Rex

Trail—RST 119, ADL 412566, ADL 401880 (May 12, 2008).

of the monitoring program will be to gather trail/travel conditions, use and impact data, and to evaluate the usefulness of the program for making future management decisions."

Caywood also appealed the amended decision to the commissioner, who again denied the appeal. Caywood then appealed both decisions to the superior court. The superior court affirmed the commissioner, and Caywood now brings the appeal to this court.

## III. STANDARD OF REVIEW

■ Where the superior court has acted as an intermediate appellate court reviewing an agency decision, we review the agency decision directly.[3]

The questions in this case are whether the restrictions imposed on the use of the trail are (1) authorized by statute and (2) arbitrary or unreasonable. The first question is a question of law to which we apply our own independent judgment without affording significant deference to the agency's decision.[4] The second question involves a discretionary decision of the agency. We review it deferentially, asking primarily whether the agency has taken a hard look at the problem under review and has engaged in reasoned decision making.[5]

---

3. *Interior Alaska Airboat Ass'n v. State, Bd. of Game*, 18 P.3d 686, 689 (Alaska 2001).

4. *Stevenson v. Burgess*, 570 P.2d 728, 731 (Alaska 1977).

5. *Interior Alaska Airboat Ass'n*, 18 P.3d at 690.

6. AS 44.37.020.

7. AS 38.05.005. The Division of Mining, Land and Water is referred to as "division of lands" in the statute.

8. AS 38.05.035(a)(2) provides that the director shall "manage, inspect, and control state land and improvements on it belonging to the state and under the jurisdiction of the division."

9. This is not true if the particular right-of-way in question has been transferred to the Department of Transportation and Public Facilities. AS 19.30.400. This has not occurred with respect to the Rex Trail.

## IV. DISCUSSION

### A. Statutory And Regulatory Background

Under the Alaska Land Act, the Department of Natural Resources is charged with administering state lands.[6] Within the Department, the Division of Mining, Land and Water bears this responsibility.[7] Specifically, the director of the Division of Mining, Land and Water has the delegated authority to manage and control state lands.[8]

Under AS 19.30.400(a), R.S. 2477 rights-of-way such as the Rex Trail are "available for use by the public under regulations adopted by the Department of Natural Resources...."[9] One such regulation is 11 Alaska Administrative Code (AAC) 51.100, which vests the commissioner with management authority and permits the commissioner to restrict right-of-way uses in order to protect public safety, the right-of-way, and the servient estate.[10]

The statute primarily in controversy in this case is AS 38.04.058 which provides:

> The commissioner may, under terms agreed to in writing by a grantee, lessee, or interest holder of state land, restrict the use of an easement or right-of-way reserved under AS 38.04.050, 38.04.055, or other law in order to protect public safety or property. The commissioner may not agree to or enforce a restriction under this

---

10. 11 AAC 51.100(a) (2005) provides in relevant part:

> The commissioner has management authority over the use of any R.S. 2477 right-of-way that is not on the Alaska highway system. Certain land use actions on R.S. 2477 rights-of-way, including road construction, may require a permit under 11 AAC 96.010, or other authorization by the department. Based on a written determination by the commissioner, the commissioner will, in the commissioner's discretion, close or restrict the use of an R.S. 2477 right-of-way over which the commissioner has management authority in order to
> (1) protect public safety;
> (2) protect the right-of-way and the servient estate against damage that may be caused by use during storms, floods, thawing conditions, or construction and maintenance operations....

section unless the restriction is narrowly tailored to achieve the protection of public safety and property while preserving access to the maximum extent practicable and the commissioner makes a written finding identifying how the restriction will protect public safety and public or private property.

The text of the statutes to which section .058 refers, AS 38.04.050 and AS 38.04.055, is set forth in the margin.[11]

Alaska Statute 38.04.200 limits the authority of the commissioner of the Department of Natural Resources to restrict traditional means of access for the purpose of protecting "aesthetic values" except under certain conditions and for certain purposes.[12]

Regulation 11 AAC 96.020, in effect since 1970, defines generally allowed uses of state land that may be engaged in without a permit. These include using a highway vehicle with a curb weight of up to 10,000 pounds and using a recreational off-road or all-terrain vehicle with a curb weight of up to 1,500 pounds.[13]

11. AS 38.04.050 provides:

Wherever state land is surveyed for purposes of private use, legal rights-of-way and easements shall be reserved for access and, where appropriate, for utility services to each parcel of land. A right-of-way or easement shall be located to assure adequate and feasible access for the purposes for which the right-of-way or easement was intended. Where necessary and appropriate for the use intended or where required by local subdivision ordinances, the director shall arrange for the development of surface access as part of the land availability program. The direct cost of local access development shall be borne by the recipient of the land unless otherwise provided by state statutes or regulations.

AS 38.04.055 provides:

The commissioner shall reserve easements and rights-of-way on and across land that is made available for private use as necessary to reach or use public water and public and private land. An easement or right-of-way reserved under this section shall include trails that have an established history of use for commerce, recreation, transportation, or providing access to a traditional outdoor activity. In this section, "traditional outdoor activity" has the meaning given in AS 38.04.200.

12. AS 38.04.200 provides:

(a) The commissioner may not manage state land, water, or land and water so that a traditional means of access for traditional outdoor activities is restricted for the purpose of protecting aesthetic values of the land, water, or land and water or is prohibited unless the restriction or prohibition is

(1) for an area of land, water, or land and water that encompasses 640 contiguous acres or less;

(2) temporary in nature and effective cumulatively less than eight months in a three-year period;

(3) for the protection of public safety and public or private property;

(4) for the development of natural resources and a reasonable alternative for the traditional means of access across the land, water, or land and water for traditional outdoor activities on other land, water, or land and water is available and approved by the commissioner; or

(5) authorized by act of the legislature.

(b) In this section,

(1) "aesthetic values" means those values that exist as an expression of the social or cultural viewpoint held by a portion of the population;

(2) "traditional means of access" means those types of transportation on, to, or in the state land, water, or land and water, for which a popular pattern of use has developed; the term includes flying, ballooning, boating, using snow vehicles, operation of all-terrain vehicles, horseback riding, mushing, skiing, snowshoeing, and walking;

(3) "traditional outdoor activities" means those types of activities that people may use for sport, exercise, subsistence, including the harvest of foodstuffs, or personal enjoyment, including hunting, fishing, trapping, gathering, or recreational mining, and that have historically been conducted as part of an individual, family, or community life pattern on or in the state land, water, or land and water.

13. In relevant part 11 AAC 96.020 provides:

(a) A permit or other written authorization is required for uses and activities not appearing on the list in this subsection. Unless otherwise provided in (b) of this section or in a special use land requirement in 11 AAC 96.014, or in a public use area land requirement under 11 AAC 96.016, the following land uses and activities, alone or in combination, are generally allowed uses on state-owned public domain land without any permit or other written authorization from the department, except that a land use or activity for a commercial recreation purpose requires prior registration under 11 AAC 96.018:

(1) travel or travel-related activities, as follows:

(A) hiking, backpacking, skiing, climbing, or other foot travel;

(B) bicycling;

(C) travel by horse or dogsled or with pack animals;

## B. The Restrictions Are Authorized By Law.

■ The northern region manager relied on AS 38.04.058 and 11 AAC 51.100 as the authority for the initial restrictions. The commissioner's decision of August 27, 2009 relied on the same statutory section and regulation.

In his brief before us, Caywood's primary focus is on AS 38.04.058. He contends that this statute only applies where a grantee, lessee, or interest holder of state land is involved, and only then when the grantee, lessee, or interest holder agrees in writing with the restrictions imposed by DNR. He argues:

> Reasonable application of this statute would be applying it to situations where the State enters into a mineral lease and both the lessee and the State agree to certain restrictions on an easement running through the leasehold interest because it would be unsafe for the public to cross the area in light of the use of heavy equipment, explosives or strip mining on the leasehold.

Such limited applications, Caywood argues, bear no resemblance to the restrictions imposed on the 50–mile–long Rex Trail; therefore section .058 does not authorize the Rex Trail restrictions.

We agree that section .058 is a statute of limited application.[14] It does not apply to this case because, among other reasons, the restrictions here were not mutually agreed upon between the commissioner and interested grantees, lessees, or interest holders. We thus agree that section .058 does not supply authority to restrict the use of the Rex Trail.

But our conclusion that the restrictions on the Rex Trail could not be based on section .058 does not mean that the restrictions are not authorized. They clearly are authorized under 11 AAC 51.100(a). This regulation, as noted above, was promulgated under AS 19.30.400(a). It recognizes the commissioner's management authority over R.S. 2477 rights-of-way. Specifically, the commissioner is authorized to restrict right-of-way uses as necessary to promote public safety, or to protect the right-of-way or the servient estate from damage caused by use during thawing conditions. In this case the written decision of the DNR northern region manager, ratified by the commissioner's decisions on appeal, indicates that these conditions have been satisfied.

■ In addition, insofar as the right-of-way crosses state land and also because it is a state-owned interest in land, the general management authority delegated to the Division of Mining, Land and Water under AS 38.05.035(a)(2) serves as authority for the restrictions. In its brief on appeal before this court the State has relied on section .035(a)(2), and other related provisions of the Alaska Land Act, arguing that the management of trails across state land falls under the general statutory duties and powers of DNR. We agree. We also note that even

---

(D) using a highway vehicle with a curb weight of up to 10,000 pounds, including a pickup truck and four-wheel-drive vehicle, on or off an established road easement, if the use off the road easement does not cause or contribute to water quality degradation, alteration of drainage systems, significant rutting, ground disturbance, or thermal erosion;

(E) using a recreational-type off-road or all-terrain vehicle with a curb weight of up to 1,500 pounds, including a snowmachine and four-wheeler, on or off an established road easement if use off the road easement does not cause or contribute to water quality degradation, alteration of drainage systems, significant rutting, ground disturbance, or thermal erosion. . . .

**14.** Section .058 was added to chapter 4 of title 38 as part of a general revision of the statutes concerning public lands. *See* Ch. 152, § 14, SLA 1984. Section .058 was based on an amendment suggested by a large land owner, Sealaska Corporation. Sealaska explained the purpose of the new section as follows:

> Under existing law, Alaska Department of Natural Resources is authorized to reserve easements across state lands (including tidelands) as part of a land disposal or tideland lease. Existing law does not provide authority for the department to condition a reserved easement or to restrict public access in order to protect property or public safety. This amendment will allow the private owner or lessee to cooperate with the department in setting terms and conditions for public use of reserved easements to protect property or public safety.

Written testimony of Robert Loescher on S.B. 375 Before the Sen. Resources Comm., 13th Leg., 2nd Sess. (Feb. 20, 1984).

though DNR's general management authority was not relied upon by the agency in imposing the restrictions such authority nonetheless can serve as a basis for affirming the agency.[15]

## C. The Restrictions Are Not Arbitrary Or Unreasonable.

■ Caywood acknowledges that AS 38.04.200 permits restricting traditional means of access for the protection of public safety and property, but he argues that the protection of public safety and property rationale in this case is merely a ruse and the restrictions are "not supported by substantial evidence of restrictions necessary for public safety or protection of property."

The State responds to Caywood's reliance on AS 38.04.200 on a number of grounds. One is that the statute only applies to restrictions on access imposed to protect aesthetic values and the restrictions here were not imposed for this purpose. "Aesthetic values" in section .200 are defined to mean "those values that exist as an expression of the social or cultural viewpoint held by a portion of the population."[16] The State contends that the restrictions on the Rex Trail were imposed for the purpose of protection of public safety and public property and that these purposes do not fall within the meaning of aesthetic values under the statute.

We agree with the State on this point. Further, even if restrictions to protect public safety and property could also be categorized as for the protection of aesthetic values, subsection (a)(3) of section .200 excepts restrictions for the purpose of protecting public

safety and property from the coverage of the act.

■ Caywood's point that the restrictions are not supported by substantial evidence misconceives the substantial evidence standard. We review administrative adjudications to determine whether they are supported by substantial evidence.[17] Policy decisions such as whether to impose restrictions on the use of state land are reviewed under the deferential reasonable basis test.[18] Under this test we ask whether the decision is reasonable and not arbitrary.[19] In making this determination courts may not "substitute their judgment for the judgment of the agency."[20] Rather "review consists primarily of ensuring that the agency has taken a hard look at the salient problems and has genuinely engaged in reasoned decision making."[21]

We consider Caywood's argument that the restrictions are not based on substantial evidence to raise the question of whether the restrictions are reasonable and not arbitrary. The question is easily answered. The record amply supports the agency's decision that deep rutting along the Rex Trail presents a safety hazard, especially in winter to travelers on snowmachines. There is also record support for the conclusion that heavy vehicles are responsible for the worst of the rutting along the Rex Trail and that the resulting level of degradation is unacceptable. Further, the record reflects that DNR has given considerable attention and study to the question of whether restrictions should be imposed on the use of the Rex Trail and if so what they should be. The agency there-

---

**15.** A reviewing court when affirming an administrative appeal may rely on legal grounds different from those actually used by the agency. *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 165 n. 1 (Alaska 1997).

**16.** AS 38.04.200(b)(1).

**17.** *See State, Alcoholic Beverage Control Bd. v. Decker*, 700 P.2d 483, 486 (Alaska 1985):
> Although AS 44.62.570(c) enables us to independently weigh the evidence by a two-part standard, we have consistently adhered to the substantial evidence on the whole record test under AS 44.62.570(c)(2) for reviewing administrative fact findings in quasi judicial proceedings subject to the APA.... Application of the

substantial evidence test prevents a dislocation of the respective functions of administrative agencies and the courts....
> On the other hand, we apply the reasonable basis test when reviewing an agency's discretionary public policy decisions.

**18.** *Galt v. Stanton*, 591 P.2d 960, 963 (Alaska 1979).

**19.** *Interior Alaska Airboat Ass'n v. State, Bd. of Game*, 18 P.3d 686, 690 (Alaska 2001).

**20.** *Id.*

**21.** *Id.*

fore has satisfied the "hard look" and reasoned decision-making requirements of the reasonable basis standard.

## V. CONCLUSION

For these reasons the judgment of the superior court affirming the decisions of the Department of Natural Resources is AFFIRMED.