*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JAMES WILLIAMS and SUSIE WILLIAMS, | ) ) ) Supreme Court Nos. S-18528/18547 |
| Appellants and Cross-Appellees, | ) ) ) Superior Court No. 3AN-15-08446 CI |
| v. | ) O P I N I O N ) ) No. 7716 – September 6, 2024 |
| JOHN STRONG, | ) ) |
| Appellee and Cross-Appellant, | ) ) ) |
| and | ) ) |
| MUNICIPALITY OF ANCHORAGE, | ) ) |
| Appellee. | ) ) ) |

Appeals from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Alfred Clayton, Jr., Clayton & Diemer, LLC, Anchorage, for Appellants and Cross-Appellees. Anne Helzer, Anchorage, for Appellee and Cross-Appellant. Notice of nonparticipation filed by Meagan Carmichael and Robert P. Owens, Assistant Municipal Attorneys, and Blair M. Christensen, Acting Municipal Attorney, Anchorage, for Appellee Municipality of Anchorage.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.

## I.   INTRODUCTION

A man sued his neighbors, alleging that an access road on their property caused flooding on his property.  After he reached a settlement with the neighbors, the man stipulated to a dismissal of his claims with prejudice.  More than three years later the man again sued the neighbors, alleging that the flooding had continued and asserting claims of nuisance, trespass, intentional infliction of emotional distress, and breach of contract.  The superior court applied res judicata and granted summary judgment in favor of the neighbors as to the tort claims, but not as to the breach of contract claim.

Following a bench trial, the court found that the neighbors had breached their settlement agreement with the man.  The court granted specific performance and awarded consequential damages and attorney's fees, but denied the man's request for punitive damages.  The neighbors appeal the court's decision on the contract claim, and the man cross-appeals the court's summary judgment dismissal of his tort claims and denial of punitive damages.  We reverse the superior court's ruling that the man brought his breach of contract claim within the statute of limitations, as well as the court's finding of breach of contract and resulting orders related to specific performance, monetary damages, and attorney's fees.  We affirm the superior court's ruling that the man's tort claims were barred by res judicata, as well as its denial of punitive damages.

## II.   FACTS AND PROCEEDINGS

### A.   2010 Complaint And Settlement Agreement

John Strong has owned his property since 1974.  Around 1988, the owner of a property neighboring Strong's built an allegedly substandard raised driveway on that property.  Many years later the current owners, James and Susie Williams, acquired the neighboring property.  During this time period, Strong and the series of owners of the neighboring property that included the Williamses, engaged with each other and the Municipality of Anchorage about the driveway.

In August 2010 Strong filed suit against the Williamses, asserting nuisance and trespass claims related to the driveway on the Williamses' property.[1] Shortly after the suit's commencement, the parties negotiated an agreement to resolve the litigation. With the assistance of counsel, Strong signed a written settlement agreement in March 2012. In exchange for $7,500 and "the agreement of Jim Williams to upgrade his driveway in accordance with [an] attached plan and specifications by June 30, 2012," Strong released the Williamses from "all claims and causes of action asserted or which could have been asserted against [them]." The agreement also stated that "[s]tipulations for dismissal with prejudice will be signed in conjunction with the execution of this release." Attached to the agreement was a plan for an updated driveway, and five "Driveway Specifications." The specifications required:

1. Applicable Municipality of Anchorage permit for the driveway.
2. Two density tests of the type II classified fill after placement and compaction.
3. Gradation report or lab or vendor certification that the type II fill meets [Municipality] standards.
4. Inspection by [Strong's retained engineer] before the placement of geo-textile fabric, before culvert backfill, and at compaction.
5. If any construction discrepancies are observed by [Strong's retained engineer], they will be raised with the engineer of record to be resolved prior to completion of the project.

After executing the settlement agreement, the Williamses initiated the upgrade of their driveway and completed construction in June 2012.[2] After the Williamses' contractor finished building the driveway, Strong's retained engineer

---

[1] Strong also sought to have the driveway removed to abate the perceived nuisance.

[2] Notes from the Williamses' contractor indicate construction was complete on or around June 7, 2012.

notified Strong that he "completed [a] review of the driveway and culvert installation" and informed Strong's attorney "[a]t this time, not [sic] additional actions are required." Strong told the Williamses he was "satisfied." The parties signed and filed a stipulation for dismissal with prejudice in early July 2012.

## B.    2015 Complaint and Current Lawsuit

On July 21, 2015, Strong filed a new lawsuit asserting various claims related to his property, which continued to experience flooding. In addition to nuisance and trespass claims that comprised part of Strong's 2010 complaint, he also claimed intentional infliction of emotional distress (IIED) and breach of contract.[3] Strong asserted that "[d]uring most spring seasons, and periods characterized with heavy rain, water pools near [the Williamses' raised driveway] and the pool grows consistently with the amount of waterfall or snow-melt," and that he spent thousands of dollars pumping his septic system to prevent flooding of sewage. Strong also stated that after the Williamses finished reconstructing their driveway "the weather ha[d] been unseasonably dry," and did not produce water runoff "that would flood" his property "because of the dam."[4] He indicated that "[a]fter receiving a great deal of rain in 2013 [he] discovered that the culvert ha[d] not solved the flooding problem caused by the roadbed." Strong requested an order for specific performance requiring the Williamses to either remove the driveway or excavate the roadbed "to a depth necessary to restore flow of the ground water by installing" fill that would accomplish this goal. He also requested compensatory damages for the costs of septic pumping and flooding damage to his home and for his mental anguish associated with the flooding dating back to 1990, as well as punitive damages in the amount of $1,000,000.

---

[3]    The Municipality was also a defendant, but for separate claims not relevant to this appeal. The superior court dismissed those claims in 2017 and Strong appealed. *Strong v. Williams* (*Strong I*), 435 P.3d 872 (Alaska 2018). We reversed and remanded for further proceedings. *Id.* at 875-76.

[4]    Strong has referred to the driveway as a "dam" or "embankment."

### 1. Partial summary judgment

The Williamses moved for partial summary judgment regarding Strong's nuisance, trespass, and IIED claims, asserting that res judicata barred Strong from raising them in the second lawsuit. The superior court granted partial summary judgment, dismissing all of Strong's tort claims. It concluded that Strong's nuisance, trespass, and IIED claims were barred by res judicata because all of those claims arose "out of the driveway embankment." In particular, the court determined that: (1) the superior court was a "court of competent jurisdiction," (2) it had "rendered a final judgment on the merits" when it dismissed the 2010 lawsuit with prejudice, and (3) "the same cause of action and the same parties or their privies were involved in both lawsuits."[5] The court also concluded that Strong's IIED claim against the Williamses was precluded "by the broad language of the settlement agreement."

### 2. Trial

The parties participated in an eight-day bench trial in June 2022. Strong testified about his observations of flooding on his property and his need to pump his septic tank after the Williamses completed the reconstruction of their driveway. He observed that the pumping issue got worse after the driveway upgrade was complete. He read from his pumping service records, noting the pumping charge from July 2012, and emphasized that septic pumping expenses, along with attorney's fees, "ate [him] up."

Strong's grandson testified about his observations of the driveway construction after Strong signed the settlement agreement resolving the first lawsuit. He testified that he would check on the progress of the work daily. He observed that

---

[5] Prior to Strong's first appeal the superior court had concluded in a separate order that res judicata barred his tort claims. *See Strong I*, 435 P.3d at 873. In addition to maintaining its res judicata analysis on remand, the superior court determined that because Strong did not include this issue in his first appeal, the court's dismissal of those tort claims had become the law of the case.

one day at the construction site he saw "the culvert was placed literally . . . 8 inches above the water and mud that's underneath it." He said he asked one of the construction workers "how . . . is that supposed to do anything?" to which the construction worker responded with a laugh. He also stated that when he observed the project the next day the culvert "was still in the same place, 8 inches above the water, and they had finished the job," backfilling it and compacting it with new material. He testified that he told Strong about what he saw and that Strong "already knew about it" and "he was going to get after it and do what he needed to do to figure it out."

### 3. Findings of fact and conclusions of law

The court later issued a written decision addressing Strong's breach of contract claim. The court found that the Williamses breached their settlement agreement with Strong through their "failure to have the driveway upgrade constructed in accordance with the stipulated design." It cited "four principal deviations" constituting the breach.[6] The court found that "[n]ot long after the driveway work was completed, water problems resumed on Strong's land." But the court ruled that Strong was not barred by the three-year statute of limitations for contract claims because it was

---

[6] Deviations cited by the court included incorrect culvert depth, no constructed swale, existing unremoved organic material, and unchanged road location. A swale is "a low-lying or depressed and often wet stretch of land." *Swale*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998). A swale can serve as "part of a storm water drainage system." U.S. ENV'T PROT. AGENCY, STORM WATER TECH. FACT SHEET: VEGETATED SWALES (1999), https://nepis.epa.gov/Exe/ZyNET.exe/2000 44A8.TXT?ZyActionD=ZyDocument&Client=EPA&Index=1995+Thru+1999&Docs =&Query=&Time=&EndTime=&SearchMethod=1&TocRestrict=n&Toc=&TocEntry =&QField=&QFieldYear=&QFieldMonth=&QFieldDay=&IntQFieldOp=0&ExtQFie ldOp=0&XmlQuery=&File=D%3A%5Czyfiles%5CIndex%20Data%5C95thru99%5C Txt%5C00000015%5C200044A8.txt&User=ANONYMOUS&Password=anonymous &SortMethod=h%7C&MaximumDocuments=1&FuzzyDegree=0&ImageQuality=r75 g8/r75g8/x150y150g16/i425&Display=hpfr&DefSeekPage=x&SearchBack=ZyActio nL&Back=ZyActionS&BackDesc=Results%20page&MaximumPages=1&ZyEntry=1 &SeekPage=x&ZyPURL.

reasonable for Strong "to wait at least a year before concluding that a breach of contract had occurred." The court noted that the substandard construction was "not obvious to a lay person" and that the involved design requirements were "subtle." It found no evidence that the substandard construction was "pointed out" to Strong or that his lack of knowledge resulted from a "lack of diligence on his part." It determined that he could not "assess the materiality of the breach until it manifested in damage."

The court also issued orders related to Strong's requested remedies. The court ordered specific performance requiring the Williamses to rebuild the driveway, and awarded consequential damages for the cost of septic tank pumping, damage done to Strong's property, and Strong's inability to enjoy his property due to flooding and related impacts. The court also awarded Strong attorney's fees.

The court denied Strong's request for punitive damages. It held that punitive damages are not recoverable under a breach of contract theory "unless the breach constitutes an independent tort," and concluded that no independent torts had occurred. In addition, it found that neither the Williamses nor their attorney "acted fraudulently or with an intent to deceive Strong in . . . settlement negotiations" or regarding the driveway upgrade project, and that they did not "breach[] the covenant of good faith and fair dealing implied in" the settlement agreement. The court concluded that "[e]ven if a claim for punitive damages were allowed, Strong has not proven by clear and convincing evidence that the Williamses engaged in extreme and outrageous conduct so as to support an award for punitive damages. In fact, the preponderance of the evidence establishe[d] that they did not do so."

Both parties appeal.

## III. STANDARD OF REVIEW

"When the superior court holds an evidentiary hearing to resolve factual disputes about when a statute of limitations began to run, we review the resulting

findings of fact for clear error."[7]  "[W]e review de novo the legal standard used to determine accrual dates, and we review de novo questions regarding the applicable statute of limitations, the interpretation of that statute, and whether that statute bars a claim."[8]

"The question whether res judicata . . . applies is a question of law, which we . . . review de novo."[9]

"A trial court's determination of damages is a finding of fact which we affirm unless it is clearly erroneous.  But we apply our independent judgment in deciding whether the trial court's award of damages is based on an erroneous application of the law."[10]

## IV. DISCUSSION

### A. It Was Error To Determine That Strong Filed His Breach Of Contract Claim Within The Statute Of Limitations.

As a preliminary matter, Strong asserts that the Williamses failed to adequately raise their statute of limitations argument before the superior court and have thus waived the issue for appeal.  The Williamses contend the issue is not waived, and that Strong frustrated the development of this defense due to late discovery of his septic pumping service records.  Regardless, the Williamses raised the issue in the superior court such that the court considered and addressed the merits of the issue in its final order.  We are therefore able to consider and address the issue on appeal.

---

[7]    *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 396 (Alaska 2014).

[8]    *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1271 (Alaska 2013) (footnotes omitted).

[9]    *Strong I*, 435 P.3d at 874 (alteration in original) (quoting *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003)).

[10]    *Galipeau v. Bixby*, 476 P.3d 1129, 1134 (Alaska 2020) (quoting *Haines v. Comfort Keepers, Inc.*, 393 P.3d 422, 427 (Alaska 2017)).

A three-year statute of limitations applies to breach of contract claims.[11] "Generally, a cause of action for breach of contract accrues, and the statute of limitations begins to run, 'at the time of the breach of the agreement, rather than the time that actual damages are sustained as a consequence of the breach.' "[12] "When a party has contracted to perform certain duties . . . any failure to perform those duties amounts to a breach of contract."[13]

Alaska common law provides for equitable tolling of the statute of limitations of a contract claim "[w]here an element of a cause of action is not immediately apparent."[14] This rule, also known as the discovery rule, "mitigate[s] the harshness that can result from the [accrual] rule's preclusion of claims where the breach at issue provided insufficient notice of the cause of action to the plaintiff."[15] We have previously stated that under the discovery rule:

> [T]he statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action. Thus we have said the relevant inquiry is the date when the

---

[11]  AS 09.10.053.  "Statutes of limitations attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses." *Byrne v. Ogle*, 488 P.2d 716, 718 (Alaska 1971).

[12]  *Flint Hills Res. Alaska, LLC v. Williams Alaska Petroleum, Inc.*, 377 P.3d 959, 970 (Alaska 2016) (quoting *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006)); *see also Bauman v. Day*, 892 P.2d 817, 827 (Alaska 1995) (citing *Howarth v. First Nat'l Bank of Anchorage*, 540 P.2d 486, 490-91 (Alaska 1975), *aff'd on reh'g*, 551 P.2d 934 (Alaska 1976)).

[13]  *Am. Comput. Inst., Inc. v. State, Alaska Student Loan Corp.*, 995 P.2d 647, 651 (Alaska 2000).

[14]  *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508-09 (Alaska 2015) (alterations in original) (quoting *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1274 (Alaska 2013)).  In *Bauman* we held the discovery rule applied to actions in contract.  892 P.2d at 828.

[15]  *Ranes*, 355 P.3d at 509 (alteration in original) (quoting *Gefre*, 306 P.3d at 1274).

claimant reasonably should have known of the facts supporting her cause of action. We look to the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights.[16]

Thus, where a breach of contract is insufficient to notify a plaintiff of his or her cause of action, the statute of limitations may begin to run on either the date when the plaintiff is on notice that he or she should inquire further to protect their rights or the date that a plaintiff receives actual notice of the elements of their claim.[17] "The inquiry notice date is 'the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights.' "[18] Generally inquiry notice controls, but actual notice may control where a plaintiff made "reasonable inquiry but failed to discover the essential elements of the cause of action."[19]

The Williamses assert that Strong was on inquiry notice of any breach either on June 7, 2012, when the driveway upgrade was complete and he was purportedly aware the culvert had been installed incorrectly, or by July 13, 2012, when he incurred excessive septic pumping costs.[20] Both dates are more than three years prior to Strong's filing of his 2015 complaint.

---

**16** *Id.* (alterations in original) (quoting *Gefre*, 306 P.3d at 1275).

**17** *Id.* (quoting *Gefre*, 306 P.3d at 1275).

**18** *Id.* (quoting *Gefre*, 306 P.3d at 1275).

**19** *Id.* at 509 n.20 (citing *Cameron v. State*, 822 P.2d 1362, 1367 (Alaska 1991)).

**20** The Williamses would not have breached the settlement agreement until June 30, 2012, the date they promised in the agreement to have completed their driveway upgrade and had not "fully performed" on the building specifications in the contract. RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 235(2) (AM. L. INST. 1981). Comment b states that "[n]on-performance includes defective performance." *Id.* § 235 cmt. b.

Strong argues the superior court did not err in its application of the discovery rule. He contends that the defects in the Williamses' construction upgrade were essentially undetectable, like the attributes of land at issue in *Bauman v. Day*,[21] and that his claims therefore did not accrue until his land was obviously injured or damaged. Strong relies on the court's findings that elements of the driveway construction that did not adhere to the agreement were "not obvious to a lay person."

In *Bauman* we reversed the superior court's application of the statute of limitations to dismiss a contract claim, concluding that a home buyer was on inquiry notice regarding permafrost issues impacting his property only after the issue manifested in demonstrable damage to the home.[22] But the determination of inquiry notice in *Bauman* is easily distinguished from this case. In *Bauman* the permafrost problem was not detectable until there was resulting damage to the home, whereas here, Strong's own evidence demonstrates that he was aware of one or more defects in the Williamses' driveway reconstruction by the time that reconstruction was completed. Viewing the evidence in the light most favorable to Strong, the problems that Strong observed at the time the Williamses completed reconstruction of their driveway in June 2012 constituted notice that Strong needed to take action to protect his rights. While some of the defects in the driveway reconstruction observed by the court were "subtle" and "not obvious to a lay person," the height of the culvert above the water was — according to Strong's own evidence — obvious.[23] Indeed, Strong's grandson testified

---

[21] 892 P.2d 817, 828 (Alaska 1995).

[22] *Id.*

[23] Strong also testified about recurring septic problems occurring just following completion of the driveway reconstruction. And the superior court observed that "[n]ot long after the driveway work was completed, water problems resumed on Strong's land." Such testimony and findings further support the idea that Strong was on inquiry notice about problems with the reconstruction more than three years before he filed his 2015 complaint.

that he observed problems with the reconstruction of the Williamses' driveway prior to completion of the project. He testified that he informed Strong of his observations prior to its completion, and that Strong confirmed his own awareness of the problems. Moreover, Strong's response to his grandson — that he was going to get after the problem and do what he needed to in order to figure it out — acknowledged the need for him to further inquire in order to protect his rights. Unlike the plaintiff in *Bauman*, Strong saw and understood at least some of the alleged problems with the driveway reconstruction even as the reconstruction was being completed.[24]

Further distinguishing *Bauman* from the facts here, Strong and the Williamses are not parties engaged in an arms-length transaction, but rather are neighbors that had already been engaged in a protracted property dispute.[25] Strong had prior knowledge of the Williamses' driveway and associated flooding on his property. Equipped with that knowledge, and having apparently observed defects in the driveway reconstruction, Strong was on notice that the reconstruction may not be in accord with the terms of the settlement agreement and that he should inquire in order to protect his rights.

Rather than addressing inquiry notice, the superior court seemed to determine that Strong required actual notice of the harm that would result from purported breaches of the prior settlement agreement before his claims could accrue. This was error. The superior court could only decline to hold Strong to a three-year deadline based on an inquiry notice date if Strong engaged in "reasonable inquiry but failed to discover the essential elements of the cause of action."[26] But there was no evidence offered indicating that Strong inquired or investigated following his

---

[24]     *See* 892 P.2d at 828.

[25]     *See id.* at 819.

[26]     *See Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 509 n.20 (Alaska 2015) (citing *Cameron v. State*, P.2d 1362, 1367 (Alaska 1991)).

observation of problems with the driveway reconstruction, or that such investigation failed to reveal a contract breach.[27] Under the discovery rule, then, Strong's cause of action for breach of contract accrued by the time of the Williamses' completion of their driveway reconstruction, because he was on notice at that time of at least one significant way in which he believed the driveway reconstruction did not comply with the terms of the settlement agreement. Contrary to the superior court's holding, the accrual of Strong's cause of action did not rely upon Strong having suffered a certain injury or amount of harm, and it did not rely upon Strong first having a period of time to wait and see whether the breach he was on notice of was material.[28]

Strong's observations put him on notice that upon the required completion date, June 30, 2012, the Williamses were in breach of the agreement. Therefore, the statute of limitations began to run concurrently with the inquiry notice date. And Strong's complaint was filed 22 days beyond the statute of limitations period. We therefore reverse the superior court's decision that Strong's contract claim was timely filed. Given that Strong failed to file his contract claim within the three-year statute of limitations, we also reverse the court's determination that the Williamses breached the settlement agreement, and its associated awards of specific performance, additional monetary damages, and attorney's fees.[29]

---

**27** To the extent Strong's consultation with his expert could be seen as reasonable inquiry following his observations of the allegedly faulty construction of the culvert, we disagree. The undisputed septic service records after construction ended showed septic problems that would have put Strong on inquiry notice as of July 13, still more than three years before he filed his contract claim.

**28** *Cf. Raines & Shine, LLC*, 355 P.3d at 509 n.20.

**29** Because we conclude that Strong filed his complaint after the statute of limitations expired, we need not address the Williamses' additional arguments regarding the viability of Strong's contract claim, or their arguments related to remedies and attorney's fees.

**B. The Superior Court Correctly Determined That Strong's Tort Claims Were Barred By Res Judicata.**

Because Strong's 2015 suit attempted to relitigate tort claims that were addressed in his prior lawsuit, the superior court appropriately concluded that those tort claims were barred by res judicata.[30] "A judgment is given res judicata effect . . . when it is (1) a final judgment on the merits, (2) from a court of competent jurisdiction, [and] (3) in a dispute between the same parties (or their privies) about the same cause of action."[31] New claims are also precluded if they "stem from the same transaction as the claims made in [a prior] complaint."[32]

Strong does not dispute the first two elements of res judicata, and does not dispute that he and the Williamses are the same parties to his prior lawsuit.[33] Instead Strong asserts two theories in challenging the superior court's decision: (1) the agreement settling the first lawsuit was not broad enough to cover "any future claims" and (2) his current "tort claims that arose after 2012 were not at issue" in the prior lawsuit.

---

[30]    We note the superior court incorrectly held that the law of the case also barred Strong's tort claims. In his first appeal we only addressed Strong's claims against the Municipality, not his tort claims against the Williamses. Indeed the superior court had not yet issued final judgment as to the claims against the Williamses. *See Strong I*, 435 P.3d 872, 873-76 (Alaska 2018); Alaska R. App. P. 202(a). Strong's tort claims against the Williamses thus were not "directly involved with or necessarily inhering in a prior appellate decision" and arguably could not have been part of the prior appeal. *See State, Com. Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 760 (Alaska 2012) (quoting *Beal v. Beal*, 209 P.3d 1012, 1017 (Alaska 2009)).

[31]    *Strong I*, 435 P.3d at 875.

[32]    *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 821 (2006) (citing *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997)).

[33]    Strong initially claimed that the superior court "mistakenly held that settlement and stipulation dismissing the 2010 lawsuit with prejudice was a final judgment on the merits." But he later conceded that the settlement agreement "was a final judgment as to the [Williamses]." Therefore we do not address this issue.

As a preliminary matter we clarify the distinction between the doctrine of res judicata being appealed and a defense that relies on the terms of a settlement and release. While the court and Strong have intertwined both concepts, each are distinct. Res judicata is a matter of sound judicial policy and relates back to the court's dismissal of Strong's claims on the merits,[34] whereas a settlement release is presumed to be a satisfaction of all claims it covers and relates back to the parties' agreement.[35] Here, we need not consider Strong's first argument about the preclusive effect of settlement agreement.

Strong's second argument regarding when his tort claims accrued is belied by the record and is inconsistent with our precedent. Strong contends on appeal that his 2015 tort claims are not barred because the tortious conduct "arises from the Williams[es'] breach of the settlement agreement and not from the building of the embankment." Put another way, Strong is asserting that his 2010 claims and 2015 claims are not part of the same transaction under res judicata.

A transaction for purposes of res judication is a "factual grouping" the components of which "are related in time, space, origin, or motivation," and "form a convenient trial unit."[36] "The inquiry is a pragmatic one, which also compares the evidence and witnesses that may be relied on to prove each claim and the expectations of the parties."[37] We do not consider "the legal theories on which multiple claims are

---

[34]     *CSK Auto, Inc.*, 132 P.3d at 820.

[35]     *Mitchell v. Mitchell*, 655 P.2d 748, 751 (Alaska 1982) (citing *Lee v. State*, 490 P.2d 1206 (Alaska 1971), *rev'd on other grounds sub nom. Munroe v. City Council for City of Anchorage*, 545 P.2d 165, 170 n.11 (Alaska 1975)); *see also Petroleum Sales, Ltd. v. Mapco Alaska, Inc.*, 687 P.2d 923, 929 n.11 (Alaska 1984).

[36]     *CSK Auto, Inc.*, 132 P.3d at 822 (quoting *Plumber*, 936 P.2d at 167); *see also Plumber*, 936 P.2d at 167 (adopting the Restatement's test for transaction) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (Am. L. Inst. 1982)).

[37]     *Id.* at 822 (first citing *Plumber*, 936 P.2d at 167; and then citing *Alderman v. Iditarod Props. Inc.*, 104 P.3d 136, 141 (Alaska 2004)).

based" because "[o]ne cannot avoid preclusive effect of an earlier judgment by alleging the same facts under a new legal theory."**38**

Strong asserts it is the breach of the settlement agreement that "gave rise to continuing trespass and continuing nuisance." But Strong's assertion on appeal is not what he alleged in his operative complaint. That complaint did not assert that the Williamses engaged in new or different tortious conduct causing injury after Strong signed the settlement agreement. Rather his complaint states that the torts at the root of his current allegations have been ongoing since the original driveway was constructed. Indeed, Strong's claims in his 2015 complaint "are nearly exact replicas of" his 2010 complaint.**39** The complaint even seeks damages based on historical events that predated his prior complaint by two decades.**40** Strong seeks damages related not only to the time period after he signed the settlement agreement with the Williamses, but also to periods before and leading up to the settlement agreement.

And though Strong's IIED claim was not included in his 2010 complaint, the court properly determined that it was part of the same transaction as Strong's other tort claims. The court's reasoning "that [the claim] could have been brought" in 2010 is correct. Strong's IIED claim is "just a new legal theory derived from the same facts alleged in the first complaint."**41** Therefore, res judicata also bars Strong's IIED claim.

To be clear, Strong could sue for breach of the settlement agreement, if timely filed. But contrary to his argument on appeal, Strong's complaint does not assert

---

**38**     *Id.* (citing *White v. State, Dep't of Nat. Res.*, 14 P.3d 956, 959-60 (Alaska 2000)).

**39**     *See id.* at 821.

**40**     Even if Strong could prevail on a continuing trespass or nuisance theories his damages "cannot be recovered for initial time-barred acts." *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 176 n.32 (Alaska 2010) (quoting *Oaksmith v. Brusich*, 774 P.2d 191, 200 n.10 (Alaska 1989)).

**41**     *See CSK Auto, LLC*, 132 P.3d at 822.

new torts that derive from a breach of the settlement agreement, or tort claims that would survive the application of res judicata as a different transaction.[42]  And he cannot relitigate those claims now.  To conclude otherwise would cut against established public policy that "a party who once has had a chance to litigate a claim before an appropriate [court] usually ought not to have another chance to do so."[43]

We conclude that the superior court properly dismissed Strong's tort claims under res judicata.

## C.	The Superior Court Did Not Err By Denying Punitive Damages Because It Found No Evidence Of Egregious Conduct.

To award punitive damages, Alaska law requires a finding by clear and convincing evidence that a defendant's conduct was either "outrageous, including acts done with malice or bad motives" or "evidenced reckless indifference to the interest of another person."[44]  While Strong contends that the court erred because the Williamses' conduct constituted an independent tort, he did not appeal the superior court's finding that he had "not proven by clear and convincing evidence that the Williams[es] engaged in extreme and outrageous conduct" necessary "to support an award for punitive damages."  Strong had ample opportunity to elicit evidence of the Williamses' conduct regarding the settlement agreement and driveway reconstruction.  And Strong had the burden to persuade the court that the Williamses' conduct warranted such an award.[45]  Because the superior court found Strong did not meet the evidentiary burden necessary to prevail on his punitive damages claim, even if an independent tort did allow for such damages, we affirm the court's denial of Strong's claim for punitive damages.

---

**42**	*See id.*

**43**	RESTATEMENT (SECOND) OF THE LAW OF JUDGMENTS 1 Relation Between Law of Res Judicata and Law of Procedure (AM. L. INST. 1982).

**44**	AS 09.17.020(b); *see also Hagen Ins. v. Roller*, 139 P.3d 1216, 1225 (Alaska 2006).

**45**	*See Hagen Ins.*, 139 P.3d at 1225.

## V. CONCLUSION

We REVERSE the superior court's conclusion that Strong filed his breach of contract claim within the applicable statute of limitations, as well as the court's finding of breach of contract, grant of specific performance, and awards of monetary damages and attorney's fees. We AFFIRM the superior court's determinations that Strong's tort claims are barred by res judicata and that Strong's punitive damages claim is unsupported by the evidence.